## DIXON *vs.* BARCLAY.

1. A count which sets out a contract for the sale of a negro by plaintiff to defendant, in consideration of a certain sum of money, which is alleged to be less than his real value, and for the further consideration that defendant would remove him from the State, and then avers that defendant, at the time he made the contract, did not intend to remove said negro, "but *falsely and fraudulently represented*" that he would, "*with intent to deceive and defraud plaintiff*," is a count in case, and the statement of the contract is mere matter of inducement.

2. Case and trover may be united in the same declaration.

3. In an action on the case for fraud and deceit in the purchase of a slave by defendant from plaintiff, although the consideration is stated in the bill of sale, which is produced, to be a certain sum of money, yet parol proof is admissible to show that, at the time of the sale, defendant also promised to carry said slave out of the State.

4. Parol proof that a firm name was signed to a note, of which firm defendant was a member, is admissible without the production of the note itself, when it is not the foundation of the suit, and is not in the possession or control of the party offering the evidence.

5. When defendant is sued as surviving partner of a firm, in an action on the case for fraud and deceit in the purchase of a slave, the declarations of his deceased co-partner, by whom the contract was made, before and after the purchase, as to his object in purchasing, are not admissible evidence for the defendant, to show that his co-partner made the purchase on his own individual account, and not on account of the firm.

6. A negro trader may testify as to the value of a slave at a particular time, although he never saw the slave until three years after that time; and however weak and unsatisfactory such proof may be, it is error to reject it when offered.

ERROR to the Circuit Court of Talladega.

Tried before the Hon. ROBERT DOUGHERTY.

This was an ACTION ON THE CASE, by Barclay against Dixon, as survivor of Cunningham & Dixon. The first count avers, that Barclay sold to the firm of Cunningham & Dixon, a slave named Butler, at the price of $425, which was a sum below his real value; that he did so in consideration of the promise of the defendants that they would remove the slave from this State to Texas; that, at the time they made this promise, they intended to deceive and defraud the plaintiff in that behalf, and have not removed the slave, but permit him still to remain in this State, to the damage of plaintiff,

&c. The second and third counts are not materially variant from the first. The fourth and fifth are counts in trover.

There were demurrers to the counts severally, and also to the entire declaration, which were all overruled.

In the progress of the trial, Barclay, the plaintiff, proved by a witness, that he (the witness,) was present at the time the plaintiff made the contract with Cunningham, one of the firm of Cunningham & Dixon, for the purchase of the slave Butler, and requested the witness to state what the contract was. Defendant here interposed, and asked the witness if there was not a bill of sale? He said there was. Plaintiff upon notice then produced a bill of sale, which being proved, was read to the jury.

The following is a copy of the bill of sale:

"Received of H. M. Cunningham, four hundred and twenty-five dollars, in full payment for a negro boy, Butler, about 32 years of age, which boy I warrant to be sound in body and mind, and a slave for life. Talladega, Nov. 21, 1845.

(Signed)                  WM. BARCLAY."

The defendant then objected to proof by the witness of what was said and done by the parties at the time the same was made, but his objection was overruled; the witness then testified, that, at the time, the defendant, Cunningham, agreed to take the slave out of the State of Alabama, to the State of Texas, and that the plaintiff let him go at less than his real value, in consideration of such agreement. To the admission of this testimony defendant excepted.

Plaintiff proved that Cunningham, when he purchased the slave, paid part in cash and gave a note for the balance of the purchase money; that, after the death of Cunningham, the defendant, Dixon, agreed with the witness, (a son of the plaintiff,) to take this note in payment of a debt due from the witness to said defendant; further proved, by a certain witness, that the witness, at the request of plaintiff, had called on defendant after the death of Cunningham, and said to him, "they had treated the old man, (meaning plaintiff,) badly, and that the negro ought to be sent off;" and that defendant said, "they had, and that he should be sent off." In connection with this proof, plaintiff offered to prove by the witness who passed the note to defendant, in what name the

note was signed. To this the defendant objected, but the court allowed it to be done, and defendant excepted. Witness then proved, that the note was signed in the name of the partnership, Cunningham & Dixon. Plaintiff also proved, that the negro had not been removed, but was still in the country; and that his value was about $600 when he was sold.

Defendant introduced evidence to show, that Cunningham, after he purchased the slave, permitted him, with the consent of the plaintiff, to go down into the neighborhood where he had before lived, to get some things, plaintiff only exacting as a condition, that he should not be allowed to go on his (plaintiff's) premises; that Cunningham sent the negro down tied, and in charge of two able-bodied men, but that while there he made his escape, and was runaway some months; also some further evidence, conducing to repel the fraud and deceit alleged in plaintiff's declaration.

Defendant offered to prove, that Cunningham, before he made the trade with Barclay, consulted with a certain person about buying the negro, and that the object of Cunningham in buying the slave, as declared to this person, before and after the sale, was wholly unconnected with the business of Cunningham & Dixon, which was that of partners in merchandizing; also, that Cunningham, after the purchase, had offered, under his own name, and paid a reward for the slave when he ran away and was retaken; and that the advertisement in the paper for the runaway slave, was in the name of Cunningham only. This testimony was rejected by the court, and defendant excepted.

Defendant also offered to prove by one Watson, that he was a negro trader, and well acquainted with the value of negroes, and that in the spring of 1848, the slave, Butler, was not worth, in Talladega, more than $400; and further to prove, in connection with the foregoing, that any diminution in value from the increase in the age of Butler since 1845, was more than overcome by the existing advance in the price of negroes; but witness never saw Butler until 1848. This evidence the court rejected, and defendant excepted.

The foregoing was the substance of the evidence on both sides.

The court charged the jury:

That the purchase of the negro by Cunningham, one of the firm of C. & D., was not within the scope of their partnership as merchants, and would not bind Dixon, unless it was proved, that Dixon knew of and assented to it at the time, or afterwards, and before suit brought, ratified it, with a knowledge of all the facts, as a co-partnership transaction; and that unless the proof established one or the other of these cases, they must find for the defendant.

Further: that if the price at which plaintiff sold said slave Butler, was $425, and if it was not proved that the value of the slave at the time of the sale was greater than that sum, they must find for the defendant.

To these charges there was no exception from either party.

The counsel for defendant requested the court to charge:

1. That if the jury believed from the evidence, that Cunningham intended, at the time he made the contract with the plaintiff, to carry the slave out of the State, but was prevented from doing so for a time, and afterwards omitted to do so, then the plaintiff cannot recover under the three first counts of his declaration.

2. That to bind Dixon, it is necessary for plaintiff to show, that the contract which was made with Cunningham was made with him as a member of the firm of Cunningham & Dixon.

3. That as to the fact whether the slave was bought by Cunningham individually, or as a member of the firm of Cunningham & Dixon, the bill of sale is conclusive.

These several charges were all refused by the court, and defendant excepted to the refusals severally.

The several exceptions taken by plaintiff in error, as above set forth, are assigned for error.

WOODWARD, for plaintiff in error:

The three first counts against Cunningham & Dixon, or Dixon, as survivor, and the corresponding counts against Dixon individually, under the agreement, show a breach of an express contract. Case will not lie for such a breach; if so, the distinction between case and assumpsit must be abol-

ished. If such a breach is committed, and consequential damage ensue, case will lie; but there is no consequential damage resulting from this breach. But, confessing that the line between those cases in which case is the appropriate action, and those in which assumpsit is, is by no means well defined, I refer to 7 Ala. 187; 18 ib. 467.

The proof of the witness, Archibald Barclay, was clearly showing another consideration than that expressed in the bill of sale; this cannot be done. Chitty on Contracts 27, note; 1 John. 139; 16 Ala. 94. This proof tends unquestionably to prove, that the undertaking to take the negro out of the State was a part of the consideration, and different from that shown in the written terms of the contract, and, according to the above authorities, was inadmissible.

The proof of the same witness, that the signature to the note was in the firm name, was not only erroneous as proof of the contents of a writing, but it was illegal, because it was allowing the acts and declarations of Cunningham to show that Dixon was his co-partner in the transaction. One partner is not competent to prove another is his co-partner. The transaction was not within the scope of their mercantile business, and to make Dixon co-partner, every circumstance was necessary which would be necessary to make a new co-partnership. No case can be found where one is allowed to prove another is a partner. If other proof of partnership is made, then one partner may prove other facts; but the proof of partnership is a fact in which a partner always has a direct interest, and he cannot prove it. The proof here admitted, is nothing more nor less than Cunningham's declaration, that Dixon was his partner. Aston v. Jemison, 17 Ala. 61; ib. 635.

Cunningham's declarations about the time he made the trade, were the best means of ascertaining whether he intended the negro to be co-partnership property, and ought to have been admitted as a part of res gestæ. 17 Ala. 109; ib. 540; ib. 664.

The advertising and reward for the negro when run away, by Cunningham in his own name, ought to have been admitted. It was a declaration of his individual right to the negro whilst in possession.

The testimony of Watson was competent, though not as satisfactory as if he had spoken of the precise time of the purchase.

The first charge asked ought to have been given, if the old rule, that *allegata* and *probata* must correspond, is not to be expunged from the books.

The three first counts are for deceit and fraud, all charging that defendant, at the time of the contract, fraudulently intended not to take the negro out of the State. Can this allegation be sustained by proof only of a simple breach of promise, resulting from subsequent accidental circumstances, such as the running off of the negro when Cunningham was about to leave with him for Texas. If it cannot, then the charge, that if Cunningham intended at the time of the contract to carry the negro off, but was prevented, the plaintiff could not recover on the first three counts, should have been given. To recover under these counts, it was necessary to show there was an intention at the time of the contract to defraud. 18 Ala. 290, is clear to this point.

The second charge contains this principle: that at the time of the contract, Cunningham must have intended it as a co-partnership transaction, and that Barclay dealt with him as a co-partner. If Cunningham at the time made it as an individual transaction, no agreement afterwards between Cunningham and Dixon, by which the negro become partnership property, would give Barclay any right of action against Dixon, as co-partner or otherwise. There would be no privity between him and Barclay, unless it was intended as a partnership contract; unless it was such, even subsequent ratification would not make it such. The term ratification imports the doing of something for another; and if the contract was not made for Dixon as well as Cunningham, he could not ratify, but could only be let into the contract by Cunningham, and with that Barclay would have nothing to do.

RICE & MORGAN, *contra:*

1. Counts in case may be joined with counts in trover. Trover itself is an action on the case.

2. The first three counts are counts in case, and show that

by the deceit and fraud of the firm of Cunningham & Dixon, of which Dixon was a member, they procured a slave from Barclay at much less than his value, and falsely and fraudulently asserted, and promised, and agreed to remove said slave out of this State, which they have never done and never intended to do. Tnese counts contain more than was necessary, but are clearly good. Morgan v. Patrick, 7 Ala. 185; Munroe v. Pritchett, 16 ib.; Myers v. Gilbert, 18 ib. 467.

3. In an action on the case for fraud or deceit, in the purchase of property, either real or personal, parol evidence is admissible to show the fraud, although there is a bill of sale or other writing. The parol evidence in this case was clearly admissible. Hildebrand v. Fogle, 20 Ohio Rep. 147; 16 Wend. 460; 20 Pick. 237; 16 Conn. 383.

4. There was no error in overruling "defendant's objection to proof by the witness of the contract, and of what was done and said by the parties at the time the contract was made." The objection was to this evidence as a whole. As part of it was clearly admissible, the court was authorized to overrule the objection *in toto*.

5. The witness, A. R. Barclay, "swore that the defendant (Dixon,) was one of the firm of Cunningham & Dixon," at the time of the contract; that Cunningham was the member of that firm who made the contract for the slave; that Cunningham paid part of the price in cash, and gave note for the balance; that "defendant, (Dixon,) after the death of Cunningham, agreed with witness to take the note given by Cunningham for the balance of the price of the negro, in payment for rent of some land which witness (he being the son of plaintiff below,) had rented from defendant, as administrator of one Morrison; and also, after the death of Cunningham, witness heard, according to his best recollection, defendant, (Dixon,) say he had an interest in the negro." The payment of the note being thus proved by this witness, and also Dixon's admission that he "had an interest in the negro," there was no error in allowing the same witness to state how the note given for the balance of the price of the negro was signed, "in connection with other proof showing that the purchase of the negro was a partnership transaction, made by Cunningham with the knowledge of Dixon at the

time of all the facts, or ratified by Dixon with full knowledge of all the facts. Bowers v. Johnson, 10 Smedes & Marshall 169.

The objection was made to the evidence, as to how the note was signed, when offered by itself. No ground of objection was stated, and therefore the objection might well be disregarded. But after the objection was made, and before it was decided, the defendant in error offered it in connection with other evidence. No objection was made to this new offer, and although the first objection was overruled, there was no error.

6. There was no error in rejecting the offer of plaintiff in error to prove by his witness, "that Cunningham, before he made the trade for the negro, consulted with said witness about the trade, and told him what he was about to buy him for, and that the object declared before the sale and after the sale, was one wholly disconnected with the co-partnership business, and related exclusively to Cunningham's individual interest." This offer is one embracing the declarations of C.; his motive or object; the conclusions of the witness as to what was the firm business, and what not, &c. This evidence was offered as a whole. Part of it being clearly illegal and irrelevant, there was no error in excluding the whole.

The two exceptions next following the preceding one, relate to offers to prove Cunningham's declarations and acts some time after the sale, which were both illegal and totally irrelevant. Neither Cunningham nor his partner can thus make evidence for themselves.

The proof showed that the negro was sold by the defendant in error, on the 21st November, 1845. That was the date of the sale and the fraud. The plaintiff in error offered S. D. Watson as a witness, who "never saw the negro until 1848," three years after the sale, and offered to prove by him that, "in the spring of 1848, the negro Butler was not worth, in Talladega, more than $400." This proof was offered in connection with proof that "negroes (but not the negro Butler,) had advanced since the purchase of Butler by Cunningham, and that such advance in price was fully equal to any deterioration in the value of Butler by reason of the increase of his age."

This proof was properly excluded for several reasons: The value of Butler in 1848, was not a material question. Watson had never seen him until 1848, three years after the sale, and his arguments or inferences or conclusions as to deterioration from age, could not be legal proof. It would have been illegal to have allowed the proof, that Butler was not worth, in the spring of 1848, more than $400, "in Talladega." The defendant in error sold him in 1845, for less than his value at that time, trusting to the assurance and assertions of the buyers, that he should be sent out of the State; and it is not to be tolerated, that those who, by this deceitful assurance and assertion, procured the slave at less than his value in 1845, to keep him in Talladega, where his bad qualities and his flight had become well known, and by their own wrong, thus to diminish the redress for their own fraud. The evidence was illegal and improper for other reasons.

Each of the charges asked was properly refused.

The affirmative charges given by the court and not excepted to, as set forth in the bill of exceptions, laid down the law more favorably for the plaintiff in error than he was entitled to, upon the matters alluded to in his second and fourth prayer for instructions.

PHELAN, J.—The first three counts in the declaration were counts in case, and not in assumpsit, as has been argued by the plaintiff in error. Although in these counts the plaintiff sets forth a contract between himself and the defendant, this was only as matter of inducement, opening the way to the statement of the *gravamen* of his action, which is the fraud and deceit alleged to have been practiced upon him by the defendant, at the time the contract set out was made, and which consists in the secret and fraudulent purpose he then entertained, as it is alleged, of violating that stipulation of the contract which related to the removal of the slave from the State. Barney v. Dewey, 13 John. 224; 8 Gill & John. 421.

That case and trover may be joined is clear law, and there was, therefore, no misjoinder. The counts themselves separately show a substantial cause of action, in the nature of an action on the case for deceit and fraud, and are not demurra-

ble. The demurrers to each count, and also to the entire declaration, were therefore properly overruled.

The objection of Dixon to parol proof by the plaintiff of such a contract as that set forth in his declaration, after the production of the bill of sale from the plaintiff to Cunningham, given on the purchase of the slave Butler, was properly overruled, and such testimony correctly admitted.

Plaintiff was authorized by the nature of his case, to show, by parol proof, a contract between the parties different from that shown by the bill of sale. He was not proceeding upon the contract which is set out in his declaration, and which differs from that shown by the bill of sale, but he was endeavoring to show, that the defendant had perpetrated a fraud upon him. The fraud and deceit of the defendant in making with the plaintiff a contract, which, at the time he made it, he did not intend to keep, is the gist of the plaintiff's action; and the very fact which the exhibition of the bill of sale establishes, namely, a material difference between the contract as contained in it, and the contract as alleged in the declaration, and proved by the witness, is a circumstance which the plaintiff might well urge, in connection with others, to prove the fraud and deceit of which he complains. The parol proof was, then, properly admitted, although it contradicted the bill of sale ever so directly. The well settled doctrine, that you shall not introduce parol evidence to vary, contradict or explain a written instrument, does not apply to the case. Cozzins v. Whitaker, 3 S. & Port. 322.

The subject under review naturally leads next to the consideration of the charges of the court. From the nature of the charges given to which no exception was taken, as well as from some of the charges which were asked by defendant and refused, it is apparent that the nature of the plaintiff's action, and the true question at issue between the parties, was to some extent overlooked in the trial below. The charges given, and part of those which were requested by the defendant, are evidently predicated upon the idea that the action is one founded on a contract entered into between the parties respecting the slave Butler and his removal from the State, and seeking a recovery for the breach of that contract. But this is not the case. On the contrary, plaintiff's

action is predicated, not upon a contract at all, but upon an alleged act of fraud and deceit which makes the contract, or rather the apparent contract with which it stands connected, totally void; a nullity.

Upon what principle is Barclay allowed to offer parol proof of a contract which directly conflicts with a written instrument made at the same time, between the same parties, and relating to the same subject matter? Simply for the reason, that, from the very frame and nature of his action, it is his object to show, and he has taken upon him the *onus* to show, that such written instrument is tainted by fraud in its inception, and, therefore, of no validity as against the party intended to be defrauded. If the plaintiff had proceeded upon the contract as valid and subsisting, he would have been estopped by his bill of sale from setting up any verbal contract made at the same time which would conflict with it. The general doctrine to this extent is too well settled to need argument. It is, therefore, only by repudiating the contract, as one invalid for fraud, that he has been allowed to do this.

It is manifest, then, that the plaintiff rests his right to recover damages in this action upon his ability to show a case of fraud and deceit, which shall render the contract into which he entered with the defendant nugatory, and which thus leaves him free to proceed for the tort—the injury, which he suffered in being seduced into a contract which the defendant, at the very time he made it, did not intend to keep on his part.

Assuming the correctness of these views, it follows that, if Cunningham, at the time he made the purchase, intended *bona fide* to carry the slave out of the State, the very ground of the plaintiff's action, as contained in the three first counts of the declaration, namely, that the defendant at that time, *mala fide*, deceitfully and fraudulently intended not to do so, is taken from him.

Indeed, upon sifting the question to the bottom, it will be found, that the right of the plaintiff to recover in this action, not only on the first three counts, but on the entire declaration, the counts in trover included, must always depend upon his ability to show to the satisfaction of a jury these two things: first, that Cunningham, at the time he purchased the

slave Butler of Barclay, agreed with Barclay to take him out of the State, and that he did not intend to keep this agreement when he made it; and, in the second place, that Dixon knew of this fraudulent intention on the part of Cunningham, and was a party to the agreement he made with Barclay beforehand; or else, that he subsequently, and with a knowledge of all the facts, availed himself, as a member of the firm of Cunningham & Dixon, of the interest in the slave thus acquired by Cunningham.

One of the charges requested by the defendant was in these words: "That if the jury believe from the evidence, that Cunningham intended, at the time he made the contract with the plaintiff, to carry the slave out of the State, but was prevented from doing so for a time, and afterwards omitted to do so, then the plaintiff cannot recover under the three first counts of his declaration;" which the court refused.

The leading proposition of this charge was in accordance with the views we have expressed, but taken as a whole, the charge is defective in distinctness and clearness. What is meant precisely, is open to construction and difference of opinion, and for this reason the court had a right to refuse it. The jury may or may not have gathered from such a charge, that the omission or refusal of Cunningham to perform his agreement, to carry the slave out of the State, was *prima facie* evidence that he did not intend to keep the agreement when he made it; and it is proper that the charge should distinctly contain that feature to cover the merits of the question.

The proof by plaintiff of the manner in which the note given by Cunningham to Barclay, and which was passed by the witness to Dixon in payment of a debt due from him to the latter, was signed, without the production of the note itself, was entirely competent. See, on this subject, the case of Graham v. Lockhart, 8 Ala. 9.

The proof offered by defendant about Cunningham's consultation with a third person before he purchased the slave Butler, and what he said to third persons before and after was his object in purchasing, and proof of his offering a reward in his own name, and paying it, to show that the purchase was on Cunningham's individual account, and not on

account of the firm of Cunningham & Dixon, was all proper-
ly rejected. So far as the plaintiff was concerned, these acts
and declarations of Cunningham were either *res inter alios acta,*
or the mere declarations of a party in his own behalf.

The rejection of the proof as to the value of Butler, which
the defendant offered to make by the witness Watson, can-
not, however, be supported. That the testimony was weak
and unsatisfactory is true; but it cannot be held to be wholly
irrelevant. Watson was shown to be a dealer in slaves, and
therefore a better judge of the value of that property than
ordinary men; and it will not do to hold that what such a
witness testifies as to the value of a certain slave in the fall.
of 1845, because he never saw him until the spring of 1848,
is to be wholly excluded.

For this error, the judgment below is reversed, and the
cause remanded.