Patton, Governor, &c., v. Gilmer et al.

Reversed and remanded.

PATTON, Governor, &c., vs. GILMER et al.

[WAR CONTRACT—CONFEDERATE STATES.]

1. *Contract ; parol evidence admissible to show consideration.*—Parol evidence is admissible to show that the consideration of a contract is illegal, and if the consideration is illegal in part, it vitiates the whole contract, where it is an entirety and not severable.

2. *Same ; by artificial person.*—A contract made by an artificial person is void, if the consideration is illegal, or the subject matter of the contract is against public policy ; in this respect, it stands on the same ground as a natural person.

3. *Same ; money paid on an illegal contract, how recovered.*—If a party pays money on an illegal contract, he can not recover it back, in a suit, in which he insists on the existing validity of the contract ; but to do so, must, before it is fully executed, rescind it, or do some act which, in law, is equivalent to a recision.

4. *Same ; when consideration is legal, and acts to be done are in part legal and illegal.*—Where the consideration is legal, and the acts to be performed by the contract are in part legal, and in part illegal, it may be enforced as to the acts which are legal, if capable of separation from the illegal.

5. *Same ; violative of the constitution, void.*—All laws and contracts, which are hostile to, or violative of the constitution of the United States, whether made by the United States, the States, or individuals, are invalid.

6. *Same ; to aid the Confederate States.*—A contract made and entered into during the existence of the late *de facto* government of the State of Alabama, between it and some of its citizens, with the intention to aid the Confederate States, in the war with the general government, is void, and can not now be enforced in the courts of the country.

7. *Same; intention of the State ascertained by acts of its agents.*—The intention of a State, like that of a corporation must be ascertained by the acts and declarations of its constituted authorities and agents, within the scope of their duties, and the question of intent is one peculiarly within the province of a jury.

8. *Suit by the Governor; defendant competent witness.*—In a suit by the Governor of the State, the defendant is a competent witness for himself under § 2704, Revised Code.

9. *State can claim no exemption from rules of law applicable to contracts between individuals.*—A State, when it enters into a contract with its citizens, can claim no exemption from the rules of law applicable to contracts between individuals ; and all acts which relate to the contract, and all declarations of agents, which in the case of a citizen would affect the contract, held, in like manner to affect a contract made by the State.

10. *Intention of the State; what may be looked to, in arriving at.*—In arriving at what was the intention of the State, in making a contract, the acts and resolutions of the legislature, and the official acts of the officer[rs] of the State, may be looked to by the jury.

APPEAL from the City Court of Montgomery.
Tried before Hon. T. M. ARRINGTON.

THIS action was brought by R. M. Patton, as the Governor of the State of Alabama, against Wm. B. Gilmer and others, and was commenced on the 10th day of November, 1866, in the circuit court of Montgomery, and by consent was transferred to the city court.—(See 41st Alabama Reports, page 177, *et seq.*, where the complaint is set out in full ; also, the act of the legislature under which this contract was made, and which was approved on the 7th December, 1861.) The defendant's pleas are as follows : " Defendants, in short by consent, plead : 1st. That the bonds described in the complaint were issued without authority of law. 2d. That the said bonds were issued and used in aid of the war between the Confederate States and the United States, and in aid of the Confederate States, in the war then pending between the Confederate States and the United States. 3rd. That said contract was made with the intent and purpose to make arms in aid of the State of Alabama, as one of the Confederate States, in their war against the United States. 4th. That said contract was made for the purpose of making, and with the

intent to have arms made in the State of Alabama, to aid the Confederate States in the war then pending between the Confederate States and United States of America; and that the bonds alleged to have been received by said Company, were issued in aid of the said Confederate States, in said war then pending. 5th. Same as fourth plea, and with this further averment, that the said bonds have been declared void by the convention of Alabama, held — September, 1865; and by ordinance No. 25, and have been repudiated by the State of Alabama. 6th. That said company's armory, erected in pursuance of said contract, and its fixtures and materials, were permanently captured by the enemy, viz: the military forces of the United States, viz: on the first day of April, 1865, and thereby a loss accrued from said capture to the extent of the advance made by the said State, viz: the sum of $250,000, with interest thereon from the date of said contract. 7th. And the said armory having been captured, the company offered to settle, and were ready and willing to settle with the State, all unsettled matters of account between said company and said State, on the principles of equity, and the State refused to settle with said company. 8th. And the said defendants, for further plea, say: *actio non*, because they say that the contract sued on and relied on in the complaint for the recovery, was made and entered into in the State of Alabama, one of the late Confederate States, during the late war between the Confederate States and the United States, and was made and entered into, with the intent by all the parties to said contract, to aid the Confederate States in said war. 9th. And the said defendants, for further plea in this behalf, say, *actio non*, because they say, before the commencement of this suit, the State of Alabama repudiated all and every obligation arising and incurred in aid of the late war, in behalf and on the part of the Confederate States, between the United States and the Confederate States; and the defendants aver, that the several obligations and promises in the complaint mentioned, were contracted and made, and arose and were incurred in aid and in behalf of, and on the part of the Confederate States in said war. 10th. And the defendants, for

further plea, say, *actio non*, because they say that the consideration of the bond, obligations and contract upon which the plaintiff in said complaint founds his right of recovery in this action was illegal, and the defendants aver that the bond, obligations and contract were made and incurred by each and all the parties thereto, with intent to aid the Confederate States in the war existing at the time they were made, between the said Confederate States and the United States. 11th. That said John Gill Shorter and said Arms Manufacturing Company made, executed and entered into said contract, with the intent and design, and for the puropse of aiding and abetting a war, then waged by the Confederate States against the United States, and defendants aver, that said John Gill Shorter was authorized and empowered by the State of Alabama to make, execute and enter into said contract with the intent and design, and for the purpose aforesaid, and that said contract so made was illegal and void." The plaintiff demurred to pleas 3, 8, 9, and 11, and his demurrer being overruled, he took issue on all the pleas, and the cause having been submitted to a jury they returned a verdict for the defendants. As the bill of exceptions states, " the defendants introduced as a witness Hon. George Goldthwaite, and offered to prove by him, that before said contract was made, about the time it was made, and afterwards, druing the war between the Confederate States and the United States, the executive department used the guns it had and could get, in arming soldiers raised in the State, for Confederate service. To this testimony plaintiff objected, the objection was overruled, the testimony admitted, and plaintiff excepted. The defendant, Wm. B. Gilmer, was offered as a witness for defendants. His competency as a witness for defendants in this suit was objected to ; the objection was overruled, and the witness allowed to testify, and plaintiff excepted. The defendants then offered in evidence, each and every act and resolution of the legislature passed during the war between the United States and the Confederate States, bearing in any way on the subject of the war, and each and every paragraph and portion of the messages of the several governors of Ala-

bama during the said time, bearing on the same subject; and the plaintiff objected separately to each act, set of resolutions, and paragraphs of each message, so offered in evidence. The objection was made separately while each offer was made, the objections were severally overruled by the court, the testimony admitted, and excepted to each ruling.

The court gave the following charges separately, at the request of the defendants, to the giving of each of which, plaintiff excepted : 1. That if the jury find from the evidence that the State and defendants intended by the contract to have arms made, and to make arms for the purpose of aiding the Confederate States in their war against the United States, then the plaintiff can not recover. 2. That in arriving at what was the intention of the State in making the contract, the jury may look at all the facts in proof; and that they may look at the fact, that a war was then going on between the Confederate States and the United States; that Alabama was a party to that war, and that arms and money were furnished by the State to the Confederate States ; and the acts and resolutions of the legislature, and the official acts of the officers of the State. 3d. That if the jury believed from the evidence, that the State made and executed the contract sued on with the intent, and for the purpose of procuring arms to be used in shooting at, or making war against the troops of the United States, commonly called yankees, then such contract was illegal and void, and they must find for the defendant.

The plaintiff thereupon asked the court to give to the jury the following charges : 1. That the intention of the Governor of the State to use the guns, when made, in aid of the war against the United States, in which the Confederate States were then engaged, can not avoid the present contract, or prevent a recovery by the plaintiff. This charge the court did not give without qualification, but gave with the following qualifications : The intention of the Governor to use the guns contracted to be made in aid of the war against the United States, would not avoid the contract; but if it was the purpose of the State to so use

the arms made under contract, at the time the contract was made, it would be void, and to this ruling plaintiff excepted. 2d. That the intention of the State of Alabama, in desiring to have arms made, must be gathered from the language of the act under which the contract was made, and there is nothing on the face of that law which shows that the arms contracted for were to be used for any illegal purposes. This charge the court did not give without qualification, but gave with the following qualification; that there was nothing on the face of the law which shows that the arms contracted for were to be used for any illegal purpose, but the jury might look to all the evidence in the case to ascertain the intentions of the parties; and to this ruling plaintiff excepted. 3d. That there is no means of ascertaining the intention of the legislature, or of the State of Alabama, in the enactment of the law under which this contract was made, other than that furnished by the act itself; and the act furnishes no evidence of an illegal purpose. This charge the court refused to give, and the plaintiff excepted. 4th. That even if the Governor, in making the contract, and the defendants in making the contract, intended that the guns, when made, should be used in aid of the Confederate States, in their war with the United States, still, if the defendants received from the State the bonds of the State, and converted them to their own use, the plaintiff is entitled to recover the value of the bonds at the time of the conversion, and interest on such value. 5th. That even if the contract declared on was invalid, so far as it required the Arms Manufacturing Company to furnish arms by reason of the intention of the State, and the defendants to use such arms in aid of the Confederate States in the war between the United States and the Confederate States; still, if under said contract, the defendants received the bonds of the State of Alabama to the extent of $250,000, and converted them to their own use, the plaintiff is entitled to recover the value of such bonds, at the time of the conversion, and interest thereon. 6th. That the fact that a war was pending between the Confederate States and the United States, to which the State of Ala-

35

bama was a party, on the side of the Confederate States, does not prove that the State of Alabama, in passing the act under which this contract was made, intended to employ the arms in aid of the Confederate States ; and neither that fact, nor any, or all of the acts and resolutions of the legislature, read to the jury, show that this act is illegal These charges, 4, 5, and 6, the court refused to give ; and to each refusal, separately, plaintiff excepted.

The nature of the assignments of error will be seen from the opinion of the court.

JNO. W. A. SANFORD, Attorney-General, and STONE. CLOP-TON & CLANTON, for appellant.

WATTS & TROY, ELMORE & KEYES, and RICE, SEMPLE & GOLDTHWAITE, *contra*.

BYRD, J.—The questions involved in this cause, and which have been argued at length and with unusual ability by the learned counsel in behalf of appellant and appellees, have received the consideration which their magnitude and gravity demanded.

The assignments of error, so far as they are insisted on in the argument of counsel for appellant, will be disposed of in the order presented on the record.

I. Before disposing of each assignment of error we will refer to certain principles of law which we deem applicable and decisive of the most material questions raised by the record.

1. Parol evidence is admissible to show that the consideration of a contract is illegal.—2 Story on Contracts, § 675 ; 22 Alabama, 380.

2. If the consideration is illegal in part, it vitiates the whole contract, where it is an entirety and not severable. 1 Story on Contracts, §§ 458, 627.

3. A contract made by an artificial person is void, if the consideration is illegal, or the subject matter of the contract is against public policy. In this respect it stands on the same ground as a natural person.—Ang. & Am. on Corporations, § 256.

4. If a party pays money on an illegal contract, he can not recover it back in a suit in which he insists on the existing validity of the contract, but to do so, must, before it is fully executed, rescind it, or do some act which, in law, is equivalent to a rescision.—*Simpson v. Bloss*, 7 Taunt. 246 ; *Holware v. Johnson*, Cowp. 343 ; *Allen v. Rescous*, 2 *Lev.* 174 ; *White v. Bank*, 22 Pick. 181 ; *Wheeler v. Russel*, 17 ib. 281; *Shefner v. Gordon*, 12 East, 304; *Belding v. Pitkin*, 2 Caines, 149 ; *Bank v. Merrick*, 14 Mass. 322 ; Story on Contracts, § 492.

5. When the consideration is legal and the acts to be performed by the contract are in part legal and part illegal, it may be enforced as to the acts which are legal, if capable of separation from the illegal.—1 Story on Contracts, § 627.

II. Under our peculiar system of goverment, composed of States clothed with certain sovereign powers, and a general government possessing certain national and sovereign powers, which the federal constitution declares supreme over the former, it becomes a matter of no insignificant importance, and of no inconsiderable perplexity to solve satisfactorily the questions presented on this record. Ordinarily, a sovereignty can not make a contract obnoxious to the principle which declares all illegal contracts void or voidable. In other words, it can not be said with strict propriety that a sovereign power can, in a contract, violate its public policy, or make a contract which can be assailed in its own courts on that ground. For the contract which it makes is as much a declaration of its policy as any pre-existing law or policy. But in a government like ours, where, in theory at least, all sovereignty is in the people, and where they have conferred on the State and national governments only certain sovereign powers, retaining all inherent sovereignty in themselves, it does not seem that the same rule would be applicable to contracts made by the government, as in a government in which the sovereignty inherent in the people, has been vested in it—the government.

A government like ours, with limited and well defined powers, can not adopt any law, or make any contract,

which can be enforced in the courts, which is hostile to, or violative of the fundamental law—the constitution of the United States. And all such contracts, whether made by the United States, the States, or individuals, which are clearly in contravention of the provisions of this instrument or of its evident spirit and meaning, are alike reprehensible and invalid. The constitution is the supreme law of the land, and all laws and contracts in derogation of its provisions and policy, must necessarily be inoperative, at least, in the courts of the country.

III. It would seem, therefore, to follow that, the act of any State which is aimed at the overthrow of the constitution, or the solidity of the government, can not be the foundation of a valid legal demand, or stand the test of judicial scrutiny when guided by the principles of international and constitutional jurisprudence. And this, though such act might, at the time done, have been in conformity to the law and policy of a government *de facto*, formed within the boundary of the general government. The supposed *de facto* government having been overthrown and the general government having asserted and maintained its integrity and authority, no act done within such *de facto* government in antagonism to the constitution of the United States can be considered so far valid as to be enforcible in law, and this whether done by the authorities or departments of the State or national government, or by natural or artificial persons.

If, then, the State, through the Governor, made the contract with the Arms Manufacturing Company, with the intent to aid the Confederate States in the war with the general government, whether anything was ever done or not to carry out the contract, such illegal intention would *vitiate* the contract, and it could not be enforceable at its instance.—*Scheible v. Bacho*, in manuscript, January term, 1868; *Kennett v. Chambers*, How. U. S. 44; *Dixon v. Barclay*, 22 Ala. 380.

The intention of a State, like that of a corporation, must be ascertained by the acts and declarations of its constituted authorities and agents acting within the scope of their duties.—*Rives v. Plk. R. Co.*, 30 Ala. 92.

The question of intent is one which has been held by this court to be peculiarly within the province of a jury. *Morris v. Hall,* in manuscript, at January term, 1868, and cases therein cited ; *Lanier v. Branch Bank of Montgomery,* 18 Ala. 628.

IV. The pleas were pleaded in short, by consent, and being so plead, those demurred to are substantially good upon the principles herein laid down, and the court did not err in overruling the demurrer upon the grounds assigned therein.

V. The evidence of Judge Goldthwaite was not inadmissible upon the objection made thereto.

The objection made to the introduction of the acts and resolutions of the legislature, and extracts of the messages of the several governors, is too general and indefinite to avail the appellant. No particular act, resolution or message is pointed out in the bill of exceptions, or by counsel in this court, and by such an objection this court is not called on to pass upon their admissibility.—*Walker v. Walker's Ex'r,* 34 Ala. 469 ; *Rupert & Cassity v. Elston, Ex'r,* 35 ib. 79 ; *Wood v. Barker,* 37 ib. 60 ; ib. 369.

Gilmer was a competent witness by virtue of section 2704 of the Revised Code. Its language is too broad and general for us to restrict it to suits between individuals. We have on several occasions held that it was applicable to a suit between a corporation and a natural person. And whether this suit is to be treated as commenced by the governor, or the State, the witness was competent.

VII. It is a fundamental principle that the court, and not the jury, must construe statutes, written instruments, &c.` But does this exclude from the jury the consideration of such statutes, instruments, &c., whenever any right is predicated on them, and it is assailed for fraud, or illegal intent? Does the intention to accomplish an illegal act by a contract vitiate it? We say it does, if the contract is made to affectuate the illegal intention. If an act done by a corporation is assailed for illegality, and the resolutions of the constituted authorities of such corporation were introduced in evidence, it would be the duty of the court to construe such resolutions, and the court would look to the

intention of such authorities to aid it in construing them. But this rule has never been considered as excluding from the consideration of the jury such resolutions in connection with the evidence, in determining a question of fraud; or, where the intent with which the transaction was entered into, becomes a question for their determination, as excluding from them the consideration of such resolutions, or other documentary evidence. For while the court could not, upon established principles, declare a contract illegal on its face, yet it might contain certain *indicea* of fraud or of the intent charged, as, with other evidence, might make it clear and satisfactory to a jury.—*Dixon v. Barclay*, 22 Ala. 379.

So where the State or the Governor sues upon a contract founded upon a public act, and the former is assailed for illegality, and the act and contract are in evidence before the jury, we do not see how it would be erroneous for the court to charge the jury that they might look to the act and contract in connection with the other evidence in determining the intent with which the contract was made, where the intent is material to the issue.

A State, when it enters into a contract with its citizens can claim no exemption from the rules of law applicable to contracts between individuals. And all acts which relate to the contract, and all declarations of agents, which, in the case of a citizen, would affect the contract, must be held as in like manner affecting a contract made by the State· And as the acts and resolutions of the State legislature and portions of the messages of the governor were introduced in evidence, without any valid objection thereto, so far as we can see from the record, there was no error committed by the court in charging the jury that they might look at the acts and resolutions, and the official acts of the officers of the State, in arriving at what was the intention of the State, it being apparent from the record that the court referred to such acts, resolutions and official acts of officers as were in evidence. In fact, that portion of the charges which instructed them that they might look " at all the facts in proof," or if they believed "from the evidence," &c., in effect, included such acts and resolutions, &c., which had been

introduced in evidence. While it is the duty of the court to construe documentary evidence, yet it is proper for the jury to look at such proof in connection with the other evidence, in making up their verdict on the issues shown in this record.

There was no error in the charges given, nor in the refusal to give the charges asked.

Judgment affirmed.

, JUDGE, J., not sitting.