## THEDFORD vs. McCLINTOCK.

[ACTION ON PROMISSORY NOTE.]

1. *Promissory note; what consideration does not defeat collection.*—It is no defense to a suit upon a promissory note, that the consideration was a horse purchased from the plaintiff for the military service of the Confederate States, within the knowledge of the plaintiff, and that the horse was so used.

2. *Secus*—If an intention or purpose of the plaintiff to have the horse so used be shown.

3. *Same; what evidence admissible to show purpose of contract.*—Upon the trial of such an issue, any evidence is admissible to show the purpose of the parties in making the contract.

APPEAL from the Circuit Court of Clay.
Tried before Hon. CHARLES PELHAM.

Appellant, Thedford, sued the appellee, McClintock, upon a promissory note made on 20th day of November, 1865.

Defendant, among other pleas, pleaded the following:

"3d. That the plaintiff's cause of action is founded on the sale of a horse by plaintiff to defendant for the purpose of using said horse in the Confederate service, of the late Confederate States, and was actually used for said purpose in said service," &c.

"4th. That the note mentioned in plaintiff's complaint was given in renewal of a note made by defendant to plaintiff, in Randolph county, Alabama, in the year 1863, for a horse to be used by the defendant in the military service of the late Confederate States, which were at that time engaged in rebellion and waging war against the United States; and said horse was actually used in said unlawful service, and died therein; and said plaintiff well knew before and at the time of said sale of said horse that said horse was purchased for the purpose of being used in the aforesaid military service of the Confederate States, which

were then in rebellion and waging war against the United States," &c.

The 5th plea was the same in substance with the 4th, except that it alleged that the horse "was sold to defendant for the purpose and with the intention on the part of plaintiff to be used in said military service, and for the purpose and with the intention of assisting the same on the part of plaintiff; and that plaintiff well knew that said horse was being purchased for the purpose and with the intention of being used in the military service aforesaid."

The court sustained a demurrer to the third plea, and overruled it as to the fourth and fifth pleas. The parties then went to trial on issue joined on the fourth and fifth pleas, and on the plea of *non assumpsit*.

The plaintiff having introduced the note in evidence, rested. Defendant testified in his own behalf, that he was at the time of the purchase of the horse a first lieutenant in the 7th Alabama (C. S.) Cavalry; "that he went out in plaintiff's neighborhood to purchase horses for the Confederacy;" that he purchased one horse of plaintiff for which he paid in Confederate currency, when plaintiff offered to sell another, and upon defendant's answering that he had no money, plaintiff replied that it made no difference, as witness could give his note and pay plaintiff when witness drew his money on his return to camp. Under this agreement defendant purchased said horse, and gave his note therefor. At the time of the purchase, witness had on the regular uniform of a first lieutenant of Confederate cavalry. Witness did not remember having shown plaintiff any papers authorizing defendant to purchase horses for the Confederate service. He, however, told plaintiff that he was getting up horses for his company.

Plaintiff asked defendant the following questions:

1st. "Was not that mare your property?"

2d. "Did you not buy her and give your note for her?"

3d. "Was not that mare your property after you gave your note for her?"

The court, upon the objection of defendant, refused to

allow the witness to answer either of these questions, and plaintiff duly excepted.

There was some evidence that in 1865 plaintiff and defendant agreed upon a considerable reduction upon the amount of the first note, and thereupon defendant executed the note sued on, and promised to pay it in a short time. The bill of exceptions recites, that "defendant introduced a witness who proved that when a horse was taken into the Confederate service the quartermaster always valued him."

The above was all the evidence. The court charged the jury—1st, that "if they believed from the evidence that plaintiff sold the defendant the horse in 1863, and that the defendant gave him his note therefor, and that at the time the note was given the horse was intended for the military service of the Confederate States, and that plaintiff knew it, and the horse was used in that service,—then said note, first given, was void; 2d, "that if the jury believed from the evidence that the note sued on had no other consideration than the sale of the mare as shown, then the second note is void, and the jury should find for the defendant."

Plaintiff excepted to these charges, and brings the case here by appeal, assigning as error the overruling of his demurrer, the refusal of the court to permit the defendant to answer the questions asked of him, and the charges excepted to.

LEWIS E. PARSONS, for appellant.—The note first given was not void, there being no agreement that the horse should be used, and the plaintiff not aiding in any way in carrying into effect the unlawful intention of the purchaser. *Krup v. Seligman*, 8 Barbour, 439; *Armstrong v. Toler*, 11 Wheaton, 258.

But if that note was void, the horse itself constituted a valuable and lawful consideration to support the new promise—i. e., the note sued on.—*Oxford Iron Co. v. Quinchett*, 44 Ala. 487; *McElvain v. Mudd*, 44 Ala. 48.

JAMES AIKIN, *contra*.—The contract was void.—*Oxford*

42

*Iron Co. v. Quinchett,* 44 Ala. Rep. 487; *Oxford Iron Co. v. Spradley,* 46 Ala.; *Shepherd v. Reese,* 42 Ala. 329.

Whether a contract against public policy be executory or executed, no action can be brought either on the contract, or to recover back the consideration, or to recover judgment on a promissory note made in consideration of a cancellation of said contract.

There can be no rescision of a contract against public policy. Such contract is void at its inception, and there is nothing to rescind.—*Martin v. Ward,* 37 Cal.; Amer. Law Reg. (1870) 319.

B. F. SAFFOLD, J.—There can be no doubt that the defense set up would defeat the plaintiff's suit if sustained by the proof. The questions asked by the plaintiff, which the court would not allow to be answered, tended to elicit answers that might disprove this defense. While it would be manifestly illegal to have sold a horse to any one with the intention and purpose on the part of the seller to have it used in the Confederate service, there was no impropriety in merely selling a horse to a Confederate lieutenant. A contract, to be valid, must be founded on a consideration which is not *contra bonos mores,* nor against the principles of sound policy or the positive provisions of some statute law. Kent says the general and more liberal principle of discrimination is, that whether any matter, void by statute or by the common law, be mixed up with good matter, which is entirely independent of it, the good part shall stand, and the rest be held void; though if the part which is void depends on that which is bad, the whole instrument is void.—2 Kent's Com. 468; *Howe v. Synge,* 15 East, 440.

In *Armstrong v. Toler,* (11 Wheat. 258,) the following illustration of the law was declared: "Where A, during a war, contrived a plan for importing goods on his own account from the enemy's country, and goods were sent to B by the same vessel. A, at the request of B, became surety for the payment of the duties on B's goods, and became responsible for the expenses on a prosecution for the illegal importation of the goods, and was compelled to pay them: *Held,* that A might maintain an action on the promise of

B to refund the money. But if the importation is the result of a scheme between the plaintiff and defendant, or if the plaintiff has any interest in the goods, or if they are consigned to him with his privity, in order that he may protect them for the owner, a promise to repay any advances made under such understanding or agreement is utterly void." The mere knowledge of one party of the illegal conduct or intention of the other, is not sufficient to vitiate a contract between them. Some participation in the illegal act done or contemplated must enter into the consideration of the contract to have that effect. In *Bowery v. Bennett*, (1 Camp. N. P. C. 343,) where an action was brought against a prostitute to recover the value of some clothes which had been furnished by the plaintiff, Lord Ellenborough said, that the mere circumstance of the defendant being a prostitute, within the knowledge of the plaintiff, would not render the contract illegal. In order to defeat the action, it must be shown that the plaintiff expected to be paid out of the profits of the defendant's prostitution, and that he had sold her the clothes in order to carry it on.

If the sale of the horse was attended with such circumstances as were inconsistent with any other intention or purpose of the plaintiff than to have it used in hostility to the United States, the contract of sale would be void. Whether such purpose existed or not, must be determined by the jury. In this particular is the difference between this case and *The Oxford Iron Co. v. Quinchett*, (44 Ala. Rep. 487).

The judgment is reversed, and the cause remanded.