## BIBB & FALKNER, Ex'rs, *vs.* COURT OF COUNTY COMMISSIONERS.

[APPEAL FROM ORDER REFUSING MANDAMUS.]

1. *Mandamus; when will be denied.*—An application for a *mandamus* to compel a court of county commissioners in this State to provide a fund, by taxation or otherwise, to pay debts contracted during the late rebellion to feed and support the families of Confederate soldiers, will be denied. (SAFFOLD, J., *dissenting.*)

2. *War debts ; what are, within the spirit and policy of ordinance No. 37 of the convention of 1867.*—Debts so contracted are war debts, within the spirit and policy of ordinance No. 37 of the convention of 1867, and therefore void. They are also void, as debts contracted in violation of the laws and policy of the United States. (SAFFOLD, J., *dissenting.*)

APPEAL from the Circuit Court of Chambers.
Tried before Hon. LITTLEBERRY STRANGE.

This was an application by the appellants, as executors of the last will and testament of W. B. S. Gilmer, deceased, to the circuit court of Chambers county, to compel the court of county commissioners of said county of Chambers, to levy a tax to pay certain warrants, issued by said court of county commissioners during the years 1862–3–4, the property of their testator. The relators, in their petition, aver that said warrants were issued, in payment of money loaned by their testator to said court of county commissioners, to enable it " to purchase food, provisions and supplies for the poor, and for persons in needy and indigent circumstances in said county, and for money advanced by their testator in the purchase of orders and warrants issued by order of said court of county commissioners, for the

same purpose, in favor of other persons, all of which demands or claims on said county, are duly audited and allowed by said court of county commissioners, and warrants duly issued therefor, for the payment of the same, as charges on the county treasury of such county." Petitioners further show, that "there was, from the beginning of the year A. D. 1862, up to the close of the year 1864, a war going on between the United States and several of the Southern States, and a large number of citizens of said county had gone off out of said county and engaged as belligerents in said war, and had left their families in helpless and destitute circumstances, and without the means of subsistence ; under which circumstances it became, and was the duty of the court of county commissioners of said county to make provisions for their support and maintenance, &c.; that there was not sufficient funds in the county treasury, at the time said debts were contracted, for said purpose ; that the court of county commissioners, who were then acting for said county as commissioners, contracted the debts mentioned in the warrants, for the support of indigent persons in said county, in good faith and solely for the purpose of supporting the indigent in said county, large numbers of whom absolutely needed subsistence, &c.; that the money loaned, &c., was loaned in good faith by their testator, at the request of the persons then acting as court of county commissioners, and upon the faith and credit of said county," &c.

The warrants referred to, fourteen in number, are all set out in the transcript and made a part of the petition. As appears from the face of the warrants, three of them were issued "for provisions furnished the families of indigent and absent soldiers," eight others "for provisions furnished the families of absent soldiers," two warrants were issued "for money loaned for the use of families of absent soldiers," and the remaining warrant was "for cash loaned the county, with interest from date."

The petitioners then show a presentation and registration of said warrants, as by law required, and also a second time, in accordance with a requirement of said court of county commissioners, in reference to claims arising

during the war, and a refusal of the county treasurer to pay the same, and a refusal on the part of the court of county commissioners to provide in any manner for the payment, or allowance, of said claims.

The relation was demurred to—1st, because the commissioners court had no authority to borrow money; 2d, because the relation shows no legal liability against the county; 3d, because the relation shows an illegal consideration.

The court sustained the demurrer, and taxed relators with costs, and its action is now assigned for error.

FALKNER & MOLTON, for appellants.

C. D. HUDSON, and G. W. GUNN, contra.

PECK, C. J.—We think it manifest, from the whole scope of the petition to the court below, that the debts, alleged to have been contracted by the court of county commissioners of Chambers county, were contracted with appellants' testator, in the years 1862, 1863, and 1864, during the progress of the late rebellion, to obtain provisions, and otherwise to provide for the families of soldiers, in the service of the so-called Confederate States.

We hold that the appellees, the present court of county commissioners of said county, are under no legal obligation to recognize said debts, or in any way make provision for their payment.

If they are not debts embraced by the letter of ordinance No. 37 of the convention of 1867, entitled "An ordinance declaring the war debt of Alabama void," they are within the spirit and policy of said ordinance. A debt contracted to feed, or provide for the support of the families of Confederate soldiers, is as really a war debt as if contracted to feed and provide for the Confederate soldiers themselves.

But aside from said ordinance, such a debt must be held to have been contracted to aid and promote said rebellion, and therefore contracted in violation of the laws and public policy of the United States, and for that reason void.

The decision of the court below, in sustaining the de-

murrer to the relation or petition of the appellants, filed to obtain a *mandamus* to compel the appellee, the court of county commissioners of Chambers county, to provide a fund for the payment of the debts named in said petition, by taxation or otherwise, is right, and, therefore, the judgment is affirmed, at the costs of the appellants.

B. F. SAFFOLD, J., *(dissenting.)*—I dissent from the judgment of the court, in this case, for the following reasons :

The appellants applied to the circuit court, at the spring term, 1869, for a rule *nisi* to the appellee, to show cause why a *mandamus* should not issue to compel payment of certain claims against the county which accrued to their testator in the years 1862, 1863, and 1864, and to levy a tax for their payment. They allege that these claims had been audited and allowed by the commissioners court, and warrants had been issued for their payment, which are set out in the transcript ; that these warrants had been presented to the treasurer of the county, and payment of them demanded and refused ; that application had been made to the court to levy a tax, or make other provision for payment, which had also been refused.

This application was demurred to—1st, because the commissioners court had no authority to borrow money ; 2d, no legal liability against the county was shown ; 3d, the application shows an illegal consideration. The demurrer was sustained, and hence this appeal.

It must be remembered, that this cause has not been heard on its merits, and that on demurrer the facts stated in the relation must be taken as true.

Eleven of the fourteen claims are orders by the court to the county treasurer, or the probate judge, to pay the amounts therein specified, to the persons named, for provisions furnished to the families of absent soldiers. The application states, that the persons for whom the debts were contracted were indigent persons.

The second and third grounds of demurrer are not sustained by the record. It is the duty of the commissioners court to provide for the poor in the county ; and also to

audit all claims against the county. The judge of probate is required to give the holder of the claim a warrant on the treasury for the amount so allowed.—Revised Code, §§ 832, 907. The application alleges that this has been done, which establishes the existence of a legal liability.

No illegal consideration appears from the record. We can not presume that the families of soldiers relieved were those of persons in arms against the Union, or, if so, that they were ministered to because their male protectors were so engaged, without other necessity. The allegation is, that they were in destitute circumstances. It is well known that the conscription law of the Confederate States originated in dire necessity, and was executed with relentless severity. It is also true, that the more destitute portion of the people were especially its victims. The example of the Federal government, in supplying the necessities of the same class of persons, suffering from the same causes, both during and after the war, is in favor of the humanity and charity which will relieve affliction, whether imposed by misfortune or offense.

The first ground of demurrer is an objection to only a portion of the application, while it professes to answer the whole. For this reason, it ought to have been overruled. *Ferguson & Scott v. Baber's Adm'rs*, 24 Ala. 402 ; *Wilson v. Cantrell*, 19 Ala. 642.

As these claims ought to be paid, unless they fall under the denomination of debts contracted in aid of the rebellion, I think the rule *nisi* ought to have been granted, in order that their true character might be shown.

NOTE BY REPORTER.—At a subsequent day of the term, Messrs. Falkner & Molton, for appellants, filed a lengthy application for a rehearing, contending, among other things, that the fact that the families supported were families of absent soldiers, made them none the less indigent, nor relieved the county from the duty imposed by the statute and by humanity, of supporting indigent and needy persons and those unable to provide for themselves ; that the courts must presume in favor of the innocence of parties, in the absence of proof to the contrary, and that under the

evidence disclosed in the relation, the court, if it presumes at all, must presume that the absent soldiers were in the U. S. armies, or if not, were conscripted, or otherwise forced into the service of the Confederate States; and hence, that supporting their families was not illegal and contrary to public policy.

To this application the following response was made by

PECK, C. J.—I have carefully read and considered the application for a rehearing, and have again read the opinion of the court, delivered by me, and I remain satisfied with the correctness of the same. The present court of county commissioners are under no legal obligation to pay the debts contracted by the rebel court of county commissioners during the rebellion. The present court of county commissioners are in no legal sense the successors of the court called the court of county commissioners under the rebellion, or rebel government of this State. The rebel court of county commissioners could make no contract that can impose any legal obligation on the present court of county commissioners, or on the people of said county.

The application for rehearing is refused.