[Speed et als. v. Cocke, Adm'r.]

# Speed *et als. v.* Cocke, Adm'r.

## *Petition for Mandamus.*

1. *Mandamus; practice; statute; what relator must show.*—The practice as to mandamus has not been uniform. The statute of February 26, 1876, simply authorizes the contest of the return or answer. Whatever mode of procedure is adopted, the relator must show to the court that he has a clear legal right to the performance of the act or duty demanded, and that on the demand the respondents have neglected or refused performance, and that he has no other adequate remedy to enforce his right.

2. *Validity of warrant evidencing indebtedness; must be authorized by county commissioners on legal claim.*—Without authority of court of county commissioners, the judge of probate can not draw a warrant on the county treasury; and, where such authority is given, the payment of the warrant can not be enforced, unless founded on a consideration for which the county may contract or incur liability.

3. *Claims against county; when subject of contestation; matters of record; certainty required; evidence.*—If the claim has not been disallowed by the court of county commissioners it can not become the subject of judicial contestation, unless, having allowed it, the court should fail to exercise the power of taxation with which it is clothed, so that the treasury may be supplied with funds for its payment; or the allowance was induced by fraud or mistake, or the consideration of the claim subsequently failed. The allowance of the claim must be *matter of record*—which should be certain—as such record becomes *prima facie* evidence of the indebtedness of the county, and of individual right, and of the authority of the probate judge to draw his warrant.

4. *Registry of claims; not matter of record, nor sufficient evidence of claim.* The statute requires commissioners courts to keep a registry of claims allowed against the county, which registry is not the order of allowance that must appear of record, but a *memorandum* of convenient reference as to the character, amount, allowance, &c., of claims—a brief abstract of the record of allowance—which as evidence is insufficient to establish a claim against the county.

5. *Authority of commissioners to levy tax on county; when mandamus will not lie.*—The court of county commissioners is not authorized to levy a specific tax for the payment of any particular claim against the county, its only authority being to assess a per centum annually on the State assessment. If it has exercised this power to the maximum prescribed by the statute, its authority is exhausted, and there is no right to mandamus compelling the court to levy a tax.

6. *Remedy of holders of claims against county.*—The creditor must await payment from the county treasury until his claim becomes payable in the order of registration. If the county treasurer disregards the order of its registration, paying other claims in preference, over which it has priority, and its validity is conceded, the statute provides a speedy remedy by judgment against the treasurer and his sureties; mandamus to compel him to pay is not an appropriate remedy.

7. *Mandamus to issue bonds under act of December 28, 1868; registration required as of other claims.*—Relator can invoke mandamus only to compel commissioners court to issue to him bonds of the county, pursuant to act of

(15)

[Speed et als. v. Cocke, Adm'r.]

December 28, 1868. The requirement of said act, that all claims against the county on January 1, 1869, must be registered in the office of the probate judge, does not distinguish between claims which have been allowed by the commissioners court, and such as may not have been presented to, and of consequence not allowed by said court. Such claims must be so registered, or they are, by force of the statute, rejected and disallowed.

8. *Under said act, commissioners court must pass upon registered claims.* The act of December 28, 1868, confers on the commissioners court the power, and imposes the duty of inquiring into, and determining the validity of all claims which may be registered, if it exercises the power of issuing bonds for the liquidation of such claims. (Case at bar distinguished from *Commissioners Court v. Moore*, 53 Ala. 25.)

9. *The statutes for relief of indigent families of Confederate soldiers* were intended to aid the prosecution of the war, and contracts made under them must share the fate of all similar contracts made in violation of the Constitution or laws of public policy of the United States.

APPEAL from the Circuit Court of Perry.
Heard before the Hon. GEO. H. CRAIG.
The case is sufficiently stated in the opinion.

W. M. BROOKS, for appellant.—1. Mandamus should not be granted unless it appears that the relator has a clear legal right to the performance of a particular duty by respondents. The test is, whether the party has a legal right to the remedy he seeks.—High on Extraordinary Remedies, § 10. Nor will mandamus lie to compel the performance of duties, unless purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance.—*Ib.* § 24.

2. The duty sought to be enforced should be *so clear and specific that no element of discretion is left in the performance,* or mandamus will not lie. Now, in this case, the law does not require the commissioners court to issue bonds as a matter of course. They have the right and the authority to issue the bonds, but it is not *mandatory.* It is made their duty to collect taxes for the payment of claims against the county, but not to issue bonds. The simple authority to issue bonds has in it an *"element of discretion."* The creditor has no clear, specific right to bonds. The commissioners court might decide that it was better to levy taxes and pay the debt, than to exceed it by giving bonds bearing interest and such long time to run.

3. When the warrant was registered in the court in 1869, the court was not bound to pay it, or to give bonds for it, without inquiry as to its legality. It is their duty to determine whether it be a lawful claim. The court discharged such duty in 1869, and disallowed said claim; and the claim on being presented again in 1872, was disallowed. Under

these circumstances, if the relator had any remedy, it was
by the ordinary suit at law, and not by the extraordinary
remedy of mandamus.

4.   The debt was not contracted for the county, but for the
State, and any act of the court in charging the county is
improper and void.   The court acted simply as agents for
the State, under the special acts of the legislature to pro-
vide for the families of Confederate soldiers by a system of
feeding and clothing them, in the years 1861, 1862 and 1863.
The contract then, being to encourage the late war, is illegal
and void.

5.   The act of the commissioners court in allowing a claim
against a county is an executive, not a judicial, act; and if
the claim is not legally and properly chargeable, the act of
allowance is void.— *Commissioners Court of Coffee v. Moore,*
June term, 1875.

W. L. BRAGG and W. B. MODAWELL, *contra.*—1. The
acts providing for Confederate soldiers (see Acts 1861, p.
78–80; *Ib.* p. 4–8; *Ib.* p. 74; Acts of 1862, p. 26–29; Acts
of 1863, p. 16–17), were not war measures; they tendered
no inducements to enlistments; the soldiers, whose families
were provided for, were already in the field; they only pro-
vided for *indigent* families.—See *Thorington v. Smith,* 8
Wall. 1; *Schieble v. Bacho,* 41 Ala. 437, 438; *Kuckman v.
Lightnery's Executors,* 24 Grat. 26, 27; see, also, *City of
Selma v. Mullens,* 46 Ala. 412.

2.   The term of the court when this claim was allowed,
was a regular term.   The court had authority to make this
settlement with Woodson Cocke.—Ordnance 26, Convention
of 1865; Code of 1852, § 703, sub. 3; *Ib.* § 773; R. C. § 836;
Act of February 4, 1867.

3.   The order disallowing the claim at the Novem-
ber term, 1869, was a nullity.—*Commissioners, &c. v. Moore,*
June term, 1875; see, also, *People v. Supervisors of Schenec-
tady,* 35 Barbour, 417; *Supervisors of Onondaga v. Briggs,*
2 Den. 32, 34, 38, 41; *Supervisors of Chenengo v. Birdsall,*
4 Wend. 460; and being a nullity, it should have been set
aside on the petition.—*Johnson, Adm'r v. Johnson,* 40 Ala.
252; *People v. Supervisors of Schenectady, supra.*

4.   Being an audited and allowed claim against the county,
the burden of proof is on the county to show that it is illegal,
or ought not to be paid, and mandamus is the only remedy
of the creditor.—*Commissioners Court of Coffee County v.
Moore, supra.*

[Speed et als. v. Cocke, Adm'r.]

5. To sustain the defense of its legality, the county must prove two things: *first*, that the sale was illegal; and *second*, that Woodson Cocke knew that the purchase was for an illegal purpose—not that he had constructive notice of its illegal purpose from the above "war statutes," but that he had actual knowledge of the illegal purpose.—*Milner et al. v. Patton*, 49 Ala. 423; *Hanover v. Doone*, 12 Wall. 342.

6. Where the nature of a contract is such that it is indirectly illegal in its effects, or is not directly promotive of violations of law, but arises incidentally out of transactions in which the law has been violated, it will be enforced. *Armstrong v. Joler*, 11 Wheat. 258; *Schieble v. Bacho*, 41 Ala. 437, 438; see 12 Wall. 348.

7. Upon a state of facts not so strong as here presented, the county of Dinwiddie, Virginia, was held liable to pay for "*salt*" purchased by the county authorities through an agent and sold to the *poor* during the war.—*Dinwiddie County v. Stuart, Buchannan & Co.* Law and Equity Rep. vol. 3, p. 674, for May, 1877; decided April 29, 1877.

8. The county having accounted to Woodson Cocke for the value of the corn sold the county, and having given him their warrant, cannot now set up the defense of illegality. *Oxford Iron Co. v. Quinchett*, 44 Ala. 492.

9. Discretion, when it is merely ministerial and executive, such as is involved in the issue of the bonds, will be controlled by mandamus. Even if a judicial discretion exists, and it is abused, and there is no adequate remedy by appeal, or otherwise, a mandamus is the remedy.—See 2 Brick. Dig. p. 241, 26, 27, §§ 32, 30, 34, 33, 42, 43, 46, 48, 55, 56, 58, 60, 65, 66; *Carroll v. Board of Police*, 28 Miss. 38; *High on Mandamus*, § 347, 349, 350, 351, 356, and 32, 106, 84, 86, 388, 397, 375; *Cuthbert et al. v. Lewis*, 6 Ala. 262; *Marshall County v. Jackson County*, 36 Ala. 615; *Nichols v. The Comptroller*, 4 Stew. and Port. 154; *Tennessee & Coosa R. R. Co. v. Moore*, 36 Ala. 371; *Commissioners, &c. v. Rather*, 48 Ala. 433; *Elmore County v. Long*, 52 Ala. 277.

BRICKELL, C. J.—The relator, John B. Cocke, administrator of the estate of one Woodson Cocke, filed a petition, addressed to the Circuit Court, praying a writ of mandamus to be directed to the court of county commissioners, the judge of probate, and the treasurer of the county of Perry. The right to the writ is founded on the averment that the relator is the holder of a warrant on the county treasurer, drawn by the judge of probate, on the 10th day of Septem-

[Speed et als. v. Cocke, Adm'r.]

ber, 1866, pursuant to an order of the court of county commissioners held on the fourth day of September, 1866, for
the payment of the sum of four thousand one hundred and
fifty-eight 44-100 dollars to the intestate of the relator, on
the third day of December, 1867. That the warrant was on
the 17th day of September, 1866, presented to the county
treasurer, who endorsed the same as registered with him on
that day. That said warrant issued to the intestate for an
indebtedness of the county, the amount of which was allowed
to him by the court of county commissioners, *at the time and
in the manner set forth in the warrant,* and in pursuance
thereof, the judge of probate drew said warrant. A copy of
the order averred is exhibited, and to account for an apparent
discrepancy between the amount therein stated, $4,149.74,
and the amount of the warrant, $4,158.44, it is averred other
indebtedness, justly due from the county to the intestate, was
added. It is further averred that the General Assembly
passed an act, entitled "an act to register and pay the debt
of Wilcox, Perry, Butler and St. Clair counties," approved
December 28, 1868, pursuant to which the relator filed said
warrant with the judge of probate of said county, within
three months from the first day of January, 1869, and
demanded of the court the issue of bonds of the county in
payment of it, in accordance with the provisions of said act.
That the court refused to issue said bonds, and proceeded to
disallow and reject said warrant as a proper and just claim
against said county. It is further averred that the county
treasurer, in obedience to the order of said court disallowing
and rejecting said warrant, refuses payment thereof, though
he has paid claims over which said warrant was entitled to
priority. The further averment is made that the commissioners have not levied any tax for the payment of this
claim, but have levied taxes to the full extent to which they
are authorized. The prayer of the petition is for a *mandamus* compelling the commissioners court, the judge of
probate, and the county treasurer, to issue the bonds of the
county, pursuant to the act of December 28, 1868, in payment of said warrant, with the interest thereon from the
first day of April, 1869, when, it is averred, other bonds
were issued under the said act. Or, if that be not the appropriate relief, that a writ of *mandamus* issue to the court of
county commissioners, requiring them, on the next annual
assessment of county taxes, to levy a tax for the payment of
said warrant. Notice of said petition was given to the
respondents, who appeared and filed an answer denying the

validity of said warrant—denying the authority of the judge of probate to draw the same, and denying that the court of county commissioners had made any allowance of the claim alleged to be due the intestate of the relator; denying any indebtedness of the county to said intestate. Insisting that if there was any such indebtedness, it was founded on an illegal consideration, the sale to the county of corn for the support of the families of indigent Confederate soldiers; that it was contracted during the war with the intent to aid the State of Alabama, and the Confederate States, in the prosecution of hostilities against the United States. It is further insisted the relator, having filed the warrant in the office of the judge of probate, under the act of December 28, 1868, and demanded the issue to him of the bonds of the county, pursuant to said act, the court of county commissioners had jurisdiction to pass on its validity; and the judgment of the court that the warrant is invalid, is conclusive on the relator.

There are other averments in the petition and the answer not material to notice in the view we take of the case. The relator, by replication, traversed the answer, putting in issue the matters of fact to which we have referred.

The issue was tried by the court, without the intervention of a jury, and a judgment rendered, awarding a peremptory *mandamus*, compelling the respondents to issue to the relator bonds of the county in payment of said warrant, with interest thereon from the 3d day of December, 1867, deducting partial payments, and computing the interest as required by the statute in case of partial payments. That judgment is now assigned as error.

1. We have no statute, other than the act of February 26, 1876, (Pamph. Acts, 1875-6, p. 207), which defines or regulates the mode of procedure and the practice to be observed on applications for writs of *mandamus*. The practice has not been uniform, so far as we are informed. Sometimes a motion for a rule *nisi* has been submitted to the court, and if the motion presented a *prima facie* right to the writ, the rule was awarded, and on its return, and the answer, it was finally adjudged whether the party was or was not entitled to a peremptory *mandamus*. In other cases notice of the motion for the rule *nisi* has been given, and there being no controversy as to matters of fact, the parties were heard, and judgment pronounced as to the right involved, which was accepted as conclusive. In other cases, the mode of procedure adopted in this case has been pursued, and final judgment rendered on the petition and answer, awarding or

[Speed et als. v. Cocke, Adm'r.]

refusing a peremptory *mandamus*. The statute of February 26, 1876, simply authorizes the contest of the return or answer of the respondent; thereby changing the rule of the common law, which had been previously recognized, that rendered the return or answer, if sufficient in law, conclusive in point of fact.—*Commissioner's Court of Tallapoosa v. Tarver*, 21 Ala. 667. Whether the one or the other mode of procedure is adopted, the relator must show to the court that he has a clear legal right to the performance of the act or duty demanded, and that on demand, the respondents have neglected or refused performance.—Moses on Mandamus, 204. "The invariable test by which the right of a party applying for a *mandamus* is determined, is to inquire, *first*, whether he has a clear legal right; and if he has, then, *secondly*, whether there is any other adequate remedy to which he can resort to enforce his right.—*Withers v. State*, 36 Ala. 260.

2. The right of the relator, in any aspect of the case, depends on the validity of the warrant preferred as evidence of the indebtedness of the county. It is essential to the validity of the warrant that it should have been drawn by the judge of probate, in pursuance of an order of the court of county commissioners allowing to the intestate a claim against the county with which the county was legally chargeable. These things must concur; without the authority of the court of county commissioners, the judge of probate can not draw a warrant on the county treasury; and if such authority is given, if the court has allowed a claim against the county, and the warrant is drawn, payment of it can not be enforced, if the claim was not legally chargeable on the county—if it was not founded on a consideration for which the county has capacity to contract debt, or to incur liability.

3. The court of county commissioners is, by statute, declared a court of record—R. C. § 825. The judge of probate is its principal judge, the keeper of its records, and required to record its proceedings.—R. C. § 833. A duty with which it is charged, is the audit and allowance in term time, of claims against the county, which must be presented to the court, within twelve months after they accrue or become due. A failure to present them, operates a bar to their allowance. If allowed, the duty of the judge of probate is to draw a warrant on the county treasury for the sum allowed. If disallowed, they become the subject of an ordinary civil suit against the county.—R. C. §§ 907–909. The policy of the statutes is to subject all claims to the scrutiny of the court of county commissioners, through whose agency such claims

[Speed et als. v. Cocke, Adm'r.]

must be created, and the exemption of the county from litigation involving them. If the claim has not been disallowed by that court, it can not become the matter of judicial contestation; unless, having allowed it, the court should fail to exercise the power of taxation with which it is clothed, so that the treasury may be supplied with funds for its payment; or the allowance should have been induced by fraud or mistake, or the consideration of the claim should have subsequently failed. The allowance of the claim must be *matter of record.* A court of record speaks only through its records. A written memorial is the only evidence which other courts can receive of its proceedings, whether it is of the exercise of judicial power, or of mere ministerial authority and duty. *Wade v. Odeneal,* 3 Dev. 423. It is this memorial which imports absolute verity and forecloses controversy. Without adverting to the manifest variance between the warrant, not only in amount, but in the time at which the court of county commissioners allowed the claim against the county, in favor of the intestate of the relator, and the transcript of the court of county commissioners, exhibited with the petition, and introduced in evidence, we can not regard that transcript as the record of the allowance of a claim against the county. The judgment, decree, or order of any court, to be operative, must be certain and complete in itself, without reference to anything else by which to ascertain its meaning.—*Dickerson v. Walker,* 1 Ala. 48; *Spence v. Simmons,* 16 Ala. 828. It must appear to be the act of the court; if the court is exercising judicial power, the adjudication by the court, the sentence it pronounces; or, if the court is exercising ministerial power, the action of the court as expressed by the court. *Hinson v. Wall,* 20 Ala. 298; Freeman on Judgments, §§ 47–52. In *Wade v. Odeneal,* 3 Dev. 423, to which we have already referred, the action was to recover a penalty, given by statute, for collecting taxes of one whom the sheriff had returned as insolvent; and it was necessary the plaintiff should show that he had, on the return of the sheriff, been, by the county court, adjudicated insolvent. A list of the insolvent tax payers, in the handwriting of the sheriff, was introduced, on which was indorsed the word *allowed.* The clerk of the county court was introduced, and proved that no other order was made by the court, and that the defendant had settled the taxes according to the list. The court said: "The question is, how this judgment is to be proved:" (the adjudication of the county court on the return of insolvent tax payers made by the sheriff.) "Courts of record

:speak only in their records.   They preserve written memo-
rials of their proceedings which are exclusively the evidence
of those proceedings.   If they choose to keep minutes, which
·they understand, and can act on to their .satisfaction, it is
well.   If, from them, they can undertake afterwards to.draw
. out the record to perpetuate it to their successors, or to com-
municate its contents to another, I know nothing to prevent
·them but the difficulty in their own minds of being sure they
make it what it was originally intended to be.   But, until the
record be so framed, another court cannot know more than
the words of the minutes themselves import.   The records
may be identified, but their contents cannot be altered, nor
·their meaning explained by parol.   The acts of the court
. can not be thus established.   Here the testimony of the
witness was indispensable to make out a case.   Had he sent
a transcript, under the seal of his office, of what was de-
posited there, nothing could be made of it."   It is not to
be expected that the records of inferior tribunals, like the
commissioners court, will be kept with the technical accuracy
which is observed, or ought to be observed, in courts of
general jurisdiction.   However liberal other courts may be
in construing such records, they cannot dispense with the
essential requisites of certainty and completeness ; they can
not know more than the words which may be found in them
plainly import.   The paper relied on does not indicate at
what term the proceedings entered thereon were had.   If
this defect is regarded as removed by the fact stated in the
bill of exceptions, that the proceedings were had at the regu-
lar term in April, 1866, a fatal uncertainty is, that without
·the aid of extrinsic evidence it can not be known what sum
was allowed the claimant.   As the paper appears in the
present record, the entries are in three parallel columns ; the
·first of which contains the name W. Cocke, which may import
·that he was the claimant.   The second contains the words :
*Acct. for corn furnished the poor of the county ; balance due,*
·$6,313.00, *with interest from May* 1, 1863, and may import
·that he presented to the court for allowance, an account for
corn furnished the poor of the county, the balance due on
which was six thousand three hundred and thirteen dollars,
which balance, with interest thereon, he claimed.   The third
column has the word *allowed,* which seems intended rather
.as a caption to the column ; we do not intend to lay any
stress on its location.   If the word stood by itself, and should
be referred to the words found in the preceding column, the
·*most* latitudinous construction which could be given, would

be that the claim, as presented, was allowed. But beneath. is found, in figures, $3,661.54. Referring these figures to the word *allowed*, and taking the whole entry together, it would import the court had allowed only "$3,661.54" of the claim as presented, rejecting the remainder. But beneath, is the entry: *Issued*, $3,661.54, *April* 6, 1866; underneath which a line is drawn, and under the line are the figures $3,661.54, and undr them the figures $488.20, to the left of which are the words *to int.;* on the same line a line is drawn, the figures added, and the product entered, $4,149.74. What sum are we to conclude was allowed the claimant? Shall it be the sum first stated—$3,661.54—or the sum total of the several figures finally added, producing $4,149.74? Unless the paper discloses, with reasonable certainty, the amount allowed the claimant, it has not the certainty which must be found in an order allowing a claim. Certainty is essential, that it may appear the warrant of the judge of pro- bate, when drawn, is supported by the proper authority.. Suppose the judge of probate had refused to draw his warrant on this record, it would scarcely be insisted that it discloses a clear legal right to either of the sums which are found in it. In *Leveringe v. Dayton*, 4 Wash. C. C. 698, a surety was- suing to recover of his principal the amount of a judgment recorded against him, founded on the obligation executed by the principal and himself, which he averred he had paid. He offered, in evidence, a paper properly certified in these words, viz: "*United States v. Leveringe.* . . . On mo- tion, judgment for the *United States v. Leveringe; exit capias satisfaciendum*, $1,602," to which, in figures, were added interest and costs. The court say : "The paper contains no judgment, nor even the minutes of a judgment, for any sum at all; unless we are to connect the figuring with the general entry, judgment for the United States, and then conclude the aggregate of the sums stated is that for which the judgment was rendered; which would be going further than any court,. in my opinion, ought to do." No court can, with any rea- sonable certainty, without the apprehension of injustice, and that it is either enlarging or diminishing the allowance made by the commissioners court, declare this paper shows an allowance of three thousand six hundred and sixty-one 51-100, or of four thousand one hundred and forty-nine 74-100 dollars. The uncertainty is fatal to as an order of allowance. The security of the public—the safety of the funds drawn by taxation from the people, and the security of individuals, demand that greater certainty shall be found

in the orders of the court, which become *prima facie* evidence of the indebtedness of the county and of individual right, and conclusive evidence of the authority of the judge of probate to draw warrants on the county treasury.

4.  But if the record was not thus defective, we can not regard it as other than a *memorandum*, from which it may have been intended to draw out the record of the allowance of the claim, and not as the record of allowance itself.  Such *memoranda* frequently exist, and may or may not be a sufficient predicate for the entry of judgment, or of the order which should have been entered *nunc pro tunc ;* a matter which must be primarily considered and determined by the court having jurisdiction to render judgment in the first instance.  The statute requires that the commissioners court shall keep a registry of the claims which it may allow against the county.  This registry is not the order of allowance which must appear of record, but a *memorandum*, intended for the purposes of convenient reference for information as to the character, amount and time of allowance of claims which have passed the audit of the court.  It serves, also, the purpose of ready comparison of the warrants drawn by the judge of probate with the claims allowed by the court, and of like comparison of the vouchers of the county treasurer.  It is not, however, the record of the allowance ordered by the court, it is rather a brief abstract of the contents of such record.  The paper relied on, in form and contents, indicates that it is a transcript of this registry.  It may be that it is a minute of what occurred in the court from which the judge of probate, who is *pro hac vice* the ministerial officer of the court, intended to draw out the original record.  *Memoranda* of this character have been before relied on in this court as record evidence of judgments, of that which must appear of record, as the exercise by the court of the power with which it is clothed.—In *Tombeckbee Bank v. Godbold*, 3 Stew. 240, the action was against a sheriff for false return of an execution, and it was necessary to show a judgment supporting the execution.  The paper offered in evidence was a transcript from the Circuit Court of Washington county, containing a *memorandum* stating the names of the parties, plaintiff and defendant, opposite which was written, *judgment at April term*, 1821, and underneath was the entry, *judgment for* " $4,907.00," underneath which was written, *with interest up to April term*, " $122.68 ;" a line was drawn, principal and interest were added, the product extended " $5,029.68." The Circuit Court charged the jury this was not a sufficient judg—

[Speed et als. v. Cocke, Adm'r.]

·ment. The rulings of the court were affirmed, this court .saying: "The statement offered in the court below for a .judgment, can not be considered as such, but must be reviewed as a mere memorandum of the clerk, from which a final judgment could thereafter be drawn up, which in the .absence of a disclosure by the record, we can not presume has been done." The case of *Hinson v. Wall*, 20 Ala. 298, was an action on a judgment rendered in North Carolina. The evidence of the judgment was the record properly certified, in which was found the statement that a jury was ·empanneled and sworn whose finding was for the plaintiff, assessing his damages to be five hundred and eighty-five dollars; "then judgment at September term, 1844, $585." This court said: "That which purports to be a judgment is, at most, but a memorandum of the clerk, and not the solemn act of the court which finally declared and adjudged the rights of the parties to the suit to which it pertains." If the statute had not declared the court of county commissioners a court of record, if it had only fixed the *time of its terms,* and required that within the term it should exercise its jurisdiction and authority, from the very nature of the jurisdiction and authority with which it is clothed, its recognition as a court of record would have been an inevitable necessity. It could not have been supposed, unless every suggestion of ordinary prudence was disregarded, that the evidence of its proceedings should rest in the fleeting memory of witnesses to its transactions, or be committed to the uncertainty of vague and indefinite memoranda, made by those who were present at these transactions, though in them they may have participated. It may be the practice of the court, in the first instance, to suffer its proceedings committed to loose memoranda; the court may understand these memoranda, and from them, aided by its own recollection, may determine whether the record subsequently made is the true record of the proceedings of the court. Another court, to which these memoranda may be certified, looks only to them, and from the words and all ·they reasonably import, must determine what is the character and effect of the memoranda. Implications, if any are to be indulged, are not aided by any extraneous knowledge of facts, and insufficiencies can not be supplied by that which may. remain in the breast of the judge who was present at ·the transactions to which they refer. We are not considering ·the question of the mere admissibility of evidence, but of ·the weight and effect of the evidence which supports the

judgment rendered by the court, without the intervention of a jury. Waiving all question of the admissibility of the evidence, it is not sufficient to support the judgment. It fails to establish that the relator has a claim against the county, which has been audited and allowed by the court of county commissioners. It negatives the existence of any order of that court which could operate as authority to the judge of probate to draw the warrant on the county treasury in favor of the intestate of the relator.

5. The relator can claim that a *mandamus* shall issue only to compel the court of county commissioners to issue to him bonds of the county, pursuant to the act of December 28, 1868. The court is not authorized to levy a specific tax for the payment of any particular claim against the county. Its only authority is to assess a per centum annually on the State assessment. If it exercises this power, to the *maximum* of the per centum prescribed by the statute, its authority is exhausted and its duty performed, in reference to the payment of claims allowed against the county. The creditor must await payment from the county treasury, until his claim becomes payable in the order of its registration,. from the funds raised by taxation. It is averred in the petition, and seems to have been shown on the trial in the Circuit Court, that the commissioners court was not in default in the exercise of its power of taxation; that this power had been exhausted. This being true, there was in this particular, no neglect or refusal of performance of duty by the court, and the relator was without right to a *mandamus*.

6. If, as the petition avers, the county treasurer had disregarded the order of registration of the claim of the relator, paying other claims in preference to it over which it was entitled to priority of payment, and the validity of the claim was conceded, the statute provides a speedy remedy for the recovery of judgment against him and his sureties- for the amount of the claim, interest and damages.—(R. C. § 930.) *Mandamus* to compel him to pay is not an appropriate remedy.—*Arrington v. Van Houton,* 44 Ala. 284.

7. We repeat, that in no event can a *mandamus* be awarded to the relator, except to compel the court of county commissioners to issue to him bonds of the county, pursuant to the act of December 28, 1868. This act provided for the registration in the office of the judge of probate, within three months after the first day of January, 1869, of all claims against the county existing on the first day of January, 1869. It next provides, that the court of county commis-

[Speed et als. v. Cocke, Adm'r.]

sioners shall issue bonds to an amount not exceeding twenty thousand dollars, for the purpose of liquidating the registered debt of the county. The act does not distinguish between claims which have been audited and allowed by the commissioners court, and such as may not have been presented to, and of consequence not audited and allowed by the court. All, if existing on the first day of January, 1869, must be registered in the office of the judge of probate within three months, or, by force of the statute, they are rejected and disallowed. It can not be supposed that it was contemplated bonds should be issued for the liquidation of every claim which was registered without an inquiry into its justice or validity, or, though the court of commissioners should know of its invalidity. The judge of probate is charged only with the ministerial duty of registration, has no power to inquire into the validity of any claim; when it is presented, he must register, and his whole duty is performed. The court of commissioners have authority to issue the bonds for the liquidation of the registered debt. The power includes the power to inquire into and pass upon the validity of the debt, the bonds liquidated. Whoever having registered his claim with the judge of probate, claimed of the court the issue of bonds in liquidation of it, submitted to the jurisdiction with which the court is clothed, and must abide the judgment it may have rendered until that judgment shall be reversed by an appellate tribunal. It is a rule of very general application in the construction of statutes, that when a power is given in general terms by a statute, everything to make it effectual is given by implication.—9 Bac. Ab. 219, 220. The power given to the commissioners court is that of issuing bonds, not in payment of claims merely, but of the *debt* of the county which has been registered. The power can not be effectual unless it involves the power of determining what claims, which have been registered, are debts of the county. In the exercise of this power, the relator having filed his claim with the probate judge for the issue of bonds, the court adjudged the claim invalid. Whether rightfully or wrongfully is not the subject of inquiry in this collateral proceeding. The adjudication is conclusive until successfully assailed on error. It may be that notice was not given the relator of the time the court passed judgment on the claim. He was the *actor* in the court—had caused his claim to be registered, and invoked the exercise of the power of the court. The regularity of proceedings in all courts, charged him with the duty of being present at the terms of the court

[Speed et als. v. Cocke, Adm'r.]

·until final action was had on the application he had made; he is charged with notice of all the proceedings in the court subsequent to the registration of the claim.—*Duffee v. Buchanan*, 8 Ala. 27; *Harrison v. Meadows*, 41 Ala. 274.

8. In *Commissioners Court v. Moore*, 53 Ala. 25, we held that under the general statutes the allowance by the commissioners court of a claim against the county was an executive, not a judicial act; that the allowance operated an admission of indebtedness, the court could not at a subsequent term retract, by annulling or vacating it. We are satisfied with that decision. The manifest difference between that case and the present, is that the statute under consideration confers on the commissioners court necessarily the power, and imposes the corresponding duty of inquiring into and determining the validity of all claims, which may be registered, if it exercises the authority of issuing bonds for the liquidation of such claims. The general statutes do not confer the power nor impose the duty of recalling the allowance of claims. There is no necessity for the existence of such power. The allowance operates merely an admission of indebtedness, and if improvidently made, it may be shown, whenever it is attempted to enforce the claim. In the present proceeding the relator could not claim a reversal of the judgment of the commissioners court, disallowing his claim, and refusing to issue bonds for its liquidation, as a part of the registered debt of the county. So long as that judgment remains of force, it is conclusive that he has not a legal right to the issue of the bonds, under the act of December 28, 1868.

9. It is not necessary to inquire whether the evidence discloses that there was a debt due from the county to the intestate of the relator. Or, if there was such debt, whether it was contracted by the court of county commissioners, in the exercise of its general power and duty to provide for the poor of the county, or, whether it was contracted under the statutes enacted during the war, for the relief and benefit of the indigent families of Confederate soldiers. However praiseworthy may have been the spirit and motive of these latter statutes, they cannot be read without the conviction that they were intended to aid in the prosecution of the war against the United States. Such being their intent and purpose, contracts made in pursuance of them must share the fate of all similar contracts made in violation of the Constitution or laws of public policy of the United States.—*Patton v. Gilmer*, 41 Ala. 176—(s. c. 42 Ala. 528); *Sheppard v. Reese,*

42 Ala. 329 ; *Bibb & Falkner v. Commissioners Court*, 44 Ala. 119 ; *Oxford Iron Company v. Quinchett*, 44 Ala. 487 ; *Oxford Iron Company v. Spadley*, 46 Ala. 98 ; *Milner v. Patton*, 49 Ala. 423.

The judgment must be reversed, and in obedience to the practice generally pursued in this court, the cause will be remanded.