# Ware *v.* Jones.

### *Action on Promissory Notes.*

1. *Contract; what illegal.*—It is settled, beyond further controversy in this court, that a contract made here during the late war, for the sale of property which the vendor knew the purchaser was buying, to enable him to furnish material to the Confederate States, to aid in the prosecution of hostilities against the United States, is void, and can not now be enforced.

2. *Same.*—There is no difference in principle between such a sale when made directly to the Confederate States, or its agent, and a sale made to an individual who, it was known, expected to profit by it in making contracts with the Confederate States.

3. *Illegality of consideration; how must be proved.*—Illegality of consideration will not be inferred, when the evidence can reasonably and justly be reconciled with the hypothesis of legality, and he who asserts it, must prove it; but need not remove all reasonable doubt, as in criminal cases, but will be sufficient if it produces the degree of conviction essential in civil cases.

4. *Parties in pari delicto.*—The law does not look with favor or disfavor, as between the parties, upon either party to a contract made in violation of law or public policy, but declares them in *pari delicto,* and abstains from all interference between them.

APPEAL from Circuit Court of Dallas.

Tried before Hon. GEO. H. CRAIG.

Appellant, Horace Ware, brought suit against the appellee, A. T. Jones, on certain promissory notes made by the latter to the former on the 11th day of August, 1862, payable respectively, on 1st of April, and 1st of August, 1863.

The defendant pleaded, among other things, that the sole consideration of the note was the purchase of certain real and personal property, in which defendant retained an interest, with the intention on the part of both plaintiff and defendant, to use said property, which consisted of a rolling mill and furnace, in making guns, shell and other war material, "for the purpose of using the same in aid of a certain rebellion, in which plaintiff and defendant, and divers other persons were then engaged against the United States."

Issue was joined on this and other pleas, which need not be noticed, and there was a verdict and judgment for the defendant.

The evidence shows that in March, 1862, Ware owned a large iron property in Shelby county, upon which was a rolling mill and foundry. He had offered this property for sale both before and after the breaking out of the late war, and

[Ware v. Jones.]

was anxious to sell a large portion of it with a view of forming a joint stock company or corporation. For this purpose he offered to sell an interest in six-sevenths of the property. On the 18th day of March, 1862, Jones and five others entered into a contract for the purchase of six-sevenths interest in the property. This agreement was afterwards consummated in August, 1862, when Ware conveyed to a corporation which had been formed by himself and associates, each receiving shares of stock representing his interest. Part of the price was paid in cash, and for the deferred payment each of the purchasers executed his individual note for his respective share. The notes thus given by Jones are the foundation of this suit.

The evidence shows that before the contract of purchase, Jones and his associates visited an agent of the Confederate States, to ascertain, in the event of their purchase, whether they could procure a contract to manufacture iron for the Confederate States, and received assurances that the Confederate government would make a contract to take the iron, and would also advance money to enable them to manufacture the iron. This determined them to purchase, with the view of "making such contract, if they could." The evidence on the part of the plaintiff tended to show that he was not informed of this, and had no such intent in making the sale, while the evidence on behalf of defendant tended to show that the plaintiff was aware of their purpose and participated in it. Before this sale was made, defendant had a contract to furnish iron to McIlvaine & Co., who were manufacturing guns for the Confederate States, and the agreement of sale authorized him to carry out this contract, but nothing is stated in the agreement as to the purpose for which the iron was furnished, or the relation that McIlvaine & Co. bore towards the Confederate States. After the sale, the associates, who had then formed a corporation, in which Ware was a director, made a contract with the Confederate States for the sale of iron, and continued to furnish it until the close of hostilities, and Ware was surety on a bond executed to the Confederate States, to secure the repayment of moneys advanced by it on the contract.

The court charged the jury, among other things, "if the consideration of the notes was property sold by the payee during the war, to the maker, to be used by him in aid of the rebellion against the United States, and the purpose for which it was to be used was known to the vendor at the time

of the sale, the note is void, and no action can be maintained on it." The plaintiff excepted to this charge.

The court further charged the jury, "if the evidence satisfied them that the defendant and his associates were induced to enter into the contract by assurances from the agent of the Confederate government that a contract could be made with it to advance money to improve the property proposed to be bought, and to take the iron, and if the jury further believe that defendant and his associates bought said property and entered into said contract with the intention of making iron for and in aid of the Confederate States, and if they are further satisfied that at the time of making said contract, Ware knew the defendant and his associates intended and proposed making the contract in order that they might manufactuure iron in aid of said government, then this contract would be void, and plaintiff can not recover on the notes sued on." The plaintiff excepted to this charge.

The plaintiff asked a charge asserting the converse of the foregoing charge, and excepted to the refusal to give it.

He also asked the following written charges: "There is a material difference in the case in which one man sells property to the Confederate States for its use, or to its agent, and in the case where property is sold to persons who buy it for their own benefit, and expect and intend to promote their profits, by making a contract with the Confederate States to manufacture iron for, and sell the same to the Confederate States."

The law does not favor defenses based on the alleged illegality of contracts when made by purchasers against paying the purchase-money of property. The defense in such case is regarded as dishonest and immoral, and to render it available the defendant must prove it clearly."

The court refused each of these charges, and the defendant separately and duly excepted.

The charges given, and the refusal to charge as requested, is now assigned as error.

BROOKS & ROY, and WHITE & WHITE, for appellant.—At the time of the purchase, there had been no contract with the Confederate government for any purpose, and the making of one depended; *first*, whether the iron company should be organized; *second*, whether if organized it would find it to its interest to make such a contract; *third*, whether the company would be able to agree on the terms of a contract with the Confederate government. It is a knowledge of this state

[Ware v. Jones.]

of facts which it is claimed invalidates the notes. Knowledge of a purpose so vague, uncertain and undefined, and subject to so many contingencies, can not invalidate a contract otherwise lawful. In the Oxford iron cases, the act done was unlawful without reference to any contingency. The sale in itself was unlawful there; for the Oxford Iron Company not only had contracts with the Confederate States, but was known to be carrying them out. In *Hanauer v. Doane*, the vendor knew the purpose of the purchase, and that the vendee had no idea of putting the supplies to any other use.—See *Armstrong v. Toller*, 11 Wheaton, 258; 4 Burr, 206; 3 Term Report, 419; 25 Ala. 483; 54 Mo. 409. These cases come near repudiating the maxim, "*ex turpi: causa non oritur actio.*"—See, also, *Brooks v. Martin*, 2 Wallace, 70; 2 Phillip Ch. 801; *Schable v. Bacho*, 41 Ala. 437. This contract was complete without the illegal design; it would have been entered into, though no contract could have been made with the Confederate States.

During the war, neither the laws of the United States nor any policy of the government was in force in any part of the Confederate States not under the control or in the possession of the United States.—*Bier & Mason v. Dozier*, 24 Grattan, 1; *Ruckman et al. v. Lightner's Executors*, 24 Grattan, 19. When the contract was made it was lawful according to the then dominant authority, and could have been enforced in the courts of the Confederate States. Being lawful when it was made, a change of government would not render it unlawful; to make it unlawful it must have been made in violation of the laws to which the parties then owed obedience.—Authorities *supra*.

If in carrying out the contract now the defendant insisted upon any act, or the performance of anything in contravention of the laws or public policy of the United States, the court might well refuse to interfere. But no such result is sought by plaintiff; he seeks simply to collect a debt for property sold and conveyed to the defendant—not having in view any violation of existing laws.—24 Grattan, 1.

The last charge asked should have been given. The law does not favor defenses based upon the alleged illegality of contracts, when made by purchasers against paying the purchase-money for property. The defense in such cases is regarded as dishonest and immoral—*Oxford Iron Co. v. Spradley*, 46 Ala. 98–107—and must be clearly proved. Chitty on Contracts, 514, 515; Addison on Contracts, 91. The presumption of law is in favor of a contract. If reason-

ably susceptible of two meanings, that interpretation shall be put upon it which will support and give it operation. It is for the party who makes the objection to prove it clearly. Chitty and Addison, *supra*.

MORGAN, LAPSLEY & NELSON, and PETTUS, DAWSON & TILLMAN, *contra*.—The parties, by their conduct, made " a direct contribution to the resources of the Confederate government."—*Lockhart v. Horn*, 1 Wood's Rep. 639 ; *Oxford Iron Co. v. Spradley*, 46 Ala. 99 ; *Oxford Iron Co. v. Quinchette*, 44 Ala, 491 ; *Lockhart v. Horn*, 17 Wall. 570 ; *Milner, Wood & Wren v. Patton*, 49 Ala. 423. In this latter case *Thedford v. McClintoch*, 47 Ala., was overruled on this point. In *Milner, Wood & Wren v. Patton*, *supra*, the leading case of *Hanauer v. Doane*, is referred to and approved.—*Hanauer v. Doane*, 12 Wall. 342.

In the case of *Clugos v. Penalula*, 4 Dunn & East, 466, the mere fact that plaintiffs had " packed " the goods for defendant, was held to be an assistance to defendant in *smuggling*. See, also, *Riggs v. Lawrence*, 3 Dunn & East, 453 ; 21 Vermont, 188 ; 2 Mees & Wel. 153 ; 3 Barn. & Ald. 179 ; 1 Maule & Sel. 593 ; 3 Mees & Wels. 434 ; 3 McLean, 278 ; 7 Wall. 542 ; 4 Peters, 436 ; 11 Wheat. 258. See, also, United States Statutes at Large, p. 319, vol. 12.

The last two charges requested by plaintiff were erroneous. The *intent* with which the sale was made, and not the party with whom it was made, whether with the principal or through his agent, or a private individual who intends to use the property for the Confederate States, which determines its validity. In the absence of evidence to the contrary, an unlawful intent will not be presumed, and where it is set up it should be clearly proved ; but the law does not stamp the defense of illegality of consideration as " dishonest," immoral, &c. The charge would, manifestly, have misled the jury.

BRICKELL, C. J.—The instructions given the jury, and the first instruction requested by the appellant and refused, involve the same question—the validity of a contract made during the war, for the sale of property real and personal, the seller knew the purchaser was buying, to be used in the making of iron for the Confederate States, to aid and assist them in the prosecution of hostilities against the United States. The question has been several times, in various

[Ware v. Jones.]

forms, presented to this court, and with one exception, such contracts have been declared void.

In *Shepherd v. Reese*, 42 Ala. 329, a horse was purchased, the note given for the price, expressing that the horse was "to go in Captain Smith's mounted company, the horse to be paid for as he draws his money." The proof showed the horse was purchased for use in the service of the Confederate States. The question was, whether a recovery could be had on the note. The court pronounced it void, as opposed to the national policy and the constitution. At the succeeding term, in *Patton v. Gilmer*, 42 Ala. 548, the facts were that the State of Alabama had advanced a large sum of money to an association or corporation, organized for the manufacture of arms, upon a contract to deliver to the State, arms of a certain number and description, and the corporation had given bond for the performance of the contract. The action was upon the bond, assigning several breaches of the contract, and it was held the action could not be maintained. The principle of the decision, is, that all contracts which are hostile to, or violative of the constitution or laws of the United States, are invalid, whether made by individuals, or the State. And that though the contract was made during the war, when the authority and laws of the United States were by force superseded, and the authority and laws of the Confederate States were dominant, it can not now be enforced in the courts of the State, bound to the constitution of the United States, as the supreme law of the land. In *Oxford Iron Company v. Quinchett*, 44 Ala. 487, a contract for the loan or hire of mules to a party, known at the time to be engaged in the manufacture of iron for the Confederate government, with a knowledge on the part of the bailor, that they were to be employed in the work, was declared invalid. In *Oxford Iron Company v. Spradley*, 46 Ala. 98, a promissory note given by a corporation for the loan of money, to be used in erecting iron works and making iron for the Confederate government, if at the time of the loan, the lender knew the purposes for which it was borrowed, was pronounced void. In *Milner v. Patton*, 49 Ala. 423, the action was on an account for goods sold and delivered, the seller knowing the purchaser intended to use them in clothing Confederate soldiers, and it was held the action was not maintainable. Opposed to these cases, stands the case of *Thedford v. McClintock*, 47 Ala. 423, which was expressly overruled in the case of *Milner v. Patton*, *supra*.—See, also, *Bibb v. Commissioner's Court*, 44 Ala. 119; *Speed v. Cocke*, 57 Ala. 209.

[Ware v. Jones.]

These decisions must be taken as settling definitely, and finally, the law of this State, upon the question now involved; as they are supported by the decisions of the Supreme Court of the United States, though they may be opposed to the decisions of other States, we are not inclined to re-open a discussion of the reasoning on which they proceed.—*Hanauer v. Doane*, 12 Wall. 342; *Hanauer v. Woodruff*, 15 Wall. 439. The act of Congress of August 6, 1861, (U. S. Stat. vol. 12, 319), subjected to confiscation, property of any kind or description purchased or acquired, or sold, with intent to use or employ the same, or to suffer the same to be used or employed in aiding, or abetting or promoting the insurrection. The property in this case was not only sold with a knowledge that it was to be so used, but the seller was a member of the corporation formed to promote the use, and suffered it to be used first in the completion of a contract he had made to supply a contractor with the Confederate States, with iron for making arms, and then in supplying the government itself. Such at least, there was evidence tending to show, and it was in reference to the evidence the instructions were given and refused. Contracts prohibited by a statute, even when a penalty is not imposed for a violation, are void. *McGehee v. Lindsay*, 6 Ala. 16. It is said this statute was not operative in Alabama when this contract was made. But it is now of force, and as obligatory on the courts of justice within the State, as if Alabama had then as now recognized the constitution and laws of the United States, as the supreme law. The answer of Judge, J., to a similar argument in *Shepherd v. Reese, supra,* was: "The contract stands, therefore, as one executed in a foreign government; and testing its legality by the *lex loci contractus*, it must be pronounced to have been a valid contract at the time and place it was made. But can it be enforced in a court acting under the authority and constitution of the United States? We understand the law to be well settled, that it can not be if it is opposed to the national policy or national constitution?" In the instructions given and refused, we are considering, the Circuit Court did not err.

The second instruction requested by the appellant, asserts there is material difference between a sale to the Confederate States, or to its agents for its use, and a sale to an individual, who expected to profit by it in making contracts for its use with the Confederate States. The instruction does not point out, in what the difference consists. The guilty knowledge of the seller, which avoids the contract may be more appa-

rent in the one instance, than the other, from the character of the person with whom the contract is made. But in the legal consequences resulting from the contract, there is no difference. The reason in either instance the contract is held void, is, because it can not be reasonably supposed, that a party knowing another intended an illegal purpose, would directly or indirectly furnish the means of accomplishing it, if he did not intend to aid and assist it.—*Degroot v. Van Duger*, 20 Wend. 390; *Hanauer v. Doane, supra;* Story's Con. Laws, §§ 253, 254.

Expressions may be found in judicial decisions, and in text books, which seem to cast reproach on a party resisting the performance of contracts into which he has voluntarily entered, because of their illegality, and would indicate that the law looks upon the defense with disfavor. Similar expressions may be found in reference to the statute of limitations, and at one time, courts were so far led astray by them, that the statute lost much of its vigor. Such expressions are the individual opinions of the judge, or the text writer, employing them, and are not to be accepted as rules of law. The law does not regard the defense with favor or disfavor—it does not inquire whether there are or are not circumstances in the particular case, which render the defense immoral and dishonest, or render it meritorious, and a shield to the party making it, from an unconscionable demand by his adversary, who may be cruelly standing on the *letter of the bond.* The law does not look with favor or disfavor to the one party or the other, declares them *in pari delicto,* and abstains from all interference between them.

The presumption of law is in favor of the legality of contracts, and when on the court is devolved the duty of construction, if it is fairly and reasonably susceptible of two interpretations—one rendering it legal, and the other illegal, that interpretation will be adopted which will support, rather than that which will defeat it.—1 Brick. Dig. 386, § 164; 2 Chit. Con. 977. Following out the principle, illegality of consideration will not be inferred, when the evidence is justly and reasonably capable of being reconciled with the hypothesis of legality. The general rule applies, that fraud or illegality, is not to be presumed; the party affirming the one or the other, must prove it clearly, if it is denied.—2 Chit. Con. 978. It is enough, however, if the evidence is sufficient to produce in the minds of the jury that degree of conviction essential in civil cases—it is not necessary as in criminal cases, that it should remove all reasonable doubt. If the

appellant had requested the court simply to instruct the jury, that the defense in the present case ought to be clearly proved, we do not inquire whether the instruction ought to have been given—without an explanation, it would have probably misled; and instructions requested which without explanation, may mislead, are properly refused. The instruction as to the clearness of the evidence, was connected with the affirmation, that the law disfavored the defense as immoral and dishonest, which was not correct, and being incorrect in part, was refused properly; for it was not the duty of the court to analyze the charge disconnecting the correct from the incorrect.

Let the judgment be affirmed.